## BRADY v. DALY.

(Circuit Court of Appeals, Second Circuit. December 1, 1897.)

### No. 8.

1. INFRINGEMENT OF COPYRIGHT — DRAMATIC COMPOSITION — STATUTORY DAMAGES.

The unauthorized performance of a single scene in a copyrighted play (such as the railroad scene in Daly's "Under the Gaslight") may constitute a "dramatic composition," in the meaning of Rev. St. § 4966, giving damages of $100 for the first and $50 for every subsequent performance of "any dramatic composition" for which a copyright has been obtained; and such damages may be recovered though no other part of the play is taken. Daly v. Webster, 4 C. C. A. 10, 56 Fed. 483, 1 U. S. App. 573, followed.

2. SAME — APPEAL — ASSIGNMENTS OF ERROR.

Under an assignment that the court erred in excluding evidence to show that a certain feature of an infringing scene in defendant's play was not a material part of "plaintiff's play," it cannot be held that the court erred in excluding evidence that this feature was not a material part of defendant's play, and that his play continued to be successful after this feature was eliminated.

3. SAME — RES JUDICATA.

A decree in an equity suit that the copyright of a certain play is valid is conclusive in a subsequent action at law between the same parties to recover statutory damages, under Rev. St. § 4966.

4. SAME.

Under Rev. St. § 4966, it is not essential to a recovery of the statutory damages that the giving of an infringing performance shall be a willful violation of the copyright.

5. SAME — PRIOR ADJUDICATION.

In a suit in equity for injunction and accounting with respect to the infringement of a copyrighted play, where a perpetual injunction is granted, and the cause is referred to a master to ascertain the number of times the infringing scene was given, but no accounting of profits is in fact sought

or obtained, the decree does not operate to bar the plaintiff from bringing a subsequent action, under Rev. St. § 4966, to recover statutory damages.

In Error to the Circuit Court of the United States for the Southern District of New York.

This case comes here upon a writ of error brought by the defendant below to review a judgment rendered in the circuit court in favor of the plaintiff. The action was brought under section 4966, Rev. St. U. S., which provides that any person publicly performing or representing any dramatic composition for which a copyright has been obtained, without the consent of the proprietor thereof, shall be liable for damages therefor; such damages in all cases to be assessed at such sum, not less than $100 for the first and $50 for every subsequent performance, as to the court shall appear to be just. The history of the litigation, and the facts on which the judgment now under review was entered, are as follows:

On August 1, 1867, the plaintiff, Daly, duly copyrighted a dramatic composition or play, in five acts, of which he was the author, owner, and exclusive proprietor, entitled "Under the Gaslight." The play was subsequently produced by the plaintiff. It pleased the popular taste, and was successful and profitable; the plaintiff having received, as fees from different persons performing the same under his license, substantial license fees in almost every year since 1868. The popularity of the play seems to have depended in large measure upon a scene in the fourth act, known as the "railroad scene." Precisely what that is may be seen by reference to the opinions cited infra from 6 Blatchf. and 4 C. C. A. Soon after the play was produced, Dion Boucicault, without the consent of plaintiff, prepared a play called "After Dark," in which he introduced a scene varying slightly from the railroad scene as it appeared in "Under the Gaslight," so as to be colorably different, but substantially the same. Boucicault's play was performed in New York by one Palmer, against whom Daly brought suit in the circuit court, Southern district of New York. He obtained an injunction; Judge Blatchford filing an elaborate opinion, in which he held that the railroad scene in plaintiff's play was a dramatic composition, within the meaning of the copyright statutes, that plaintiff was as much entitled to protection in respect of a substantial and material original part of it as he was in respect to the whole, that the railroad scene in Boucicault's play contained everything which makes the railroad scene in plaintiff's play attractive as a representation on the stage, and that it infringed plaintiff's copyright. Daly v. Palmer (Dec., 1868) 6 Blatchf. 256, Fed. Cas. No. 3,552. Some time prior to May, 1889, the defendant in the action at bar, William A. Brady, in connection with others, without consent of plaintiff, began to produce on the stage the said play of "After Dark," including the railroad scene. On May 20, 1889, plaintiff began a suit in equity for injunction and accounting against Brady and his associates, in the same circuit court. An application for a preliminary injunction was denied upon the ground that there was a material variance between the registered title and the published title, of "Under the Gaslight." Daly v. Brady, 39 Fed. 265. When the equity suit came on for final hearing, the judge at circuit followed the decision on motion for preliminary injunction, and dismissed the bill. Daly v. Webster (Nov. 4, 1891) 47 Fed. 903. The plaintiff promptly appealed, and the cause came before this court for argument on May 13, 1892, and its decision will be found reported, under the title "Daly v. Webster," in 1 U. S. App. 573, 4 C. C. A. 10, 56 Fed. 483. We reversed the decision of the circuit court as to the supposed variances in title, and held that the plaintiff's railroad scene was a dramatic composition; that it was protected by copyright; that the railroad scene in "After Dark," as Boucicault composed it, and as it had been performed by defendant (the imperiled person being saved from death by the aid of a "rescuer"), was an infringement, but that, if performed without the introduction of a rescuer, it would not infringe. There was evidence in that suit showing that defendant had produced the scene, sometimes unchanged from Boucicault's, and sometimes without an independent rescuer, the imperiled person saving himself by inadvertently operating a switch. In conformity with the mandate of this court, a decree for perpetual injunction against defendants was entered November 5, 1892, and it was referred to a mas-

ter to take proof of the number of performances given by the defendants, and where each performance took place; the defendants being required to attend, give evidence, and produce their books and papers. Upon said examination, defendants' counsel objected to the defendants being compelled to produce the manuscript play of "After Dark," upon the ground that "neither the defendant nor his books can be used against him in any proceeding wherein it is sought to obtain a penalty, or for the purposes of this hearing before the master." The decree did not direct the master to ascertain anything in regard to profits. No evidence was offered upon that subject, and no finding was made thereon. A final decree in said cause, accepting the master's report, and making the findings of the master the findings of the court, was entered on April 1, 1893. No judgment or decree for profits was asked or rendered.

The action now under review was begun on July 14, 1893. As before stated, it is to recover statutory damages under section 4966 of the United States Revised Statutes. Issue being joined by the service of an answer, the cause came on for trial before Judge Shipman, sitting with a jury, on May 29, 1895, whereupon the parties, by their attorneys of record, filed with the clerk a stipulation in writing waiving a jury, in conformity to section 649, Rev. St. U. S., and the trial proceeded before the court without the jury. The plaintiff offered in evidence the record in the equity suit against Brady and others, which was admitted "for certain purposes"; and, having offered some testimony to show plaintiff's actual damages from the alleged infringement, he rested. The record thus admitted contained the finding of the master, adopted by the circuit court, as to the number of times that the play of "After Dark," with the infringing scene, had been publicly produced by defendant. The evidence upon which this finding was based was extorted from the defendant by the plaintiff's examination of him before the master in the equity suit. Defendant thereupon introduced some evidence, and offered more, which was rejected, and exception to such rejection reserved. The rejected evidence will be found referred to in the discussion of exceptions in the opinion infra. Having taken his proofs, and offered whatever testimony he chose to present, defendant rested. The court took the case under advisement, and on June 24, 1895, filed special findings of fact and conclusions of law. 69 Fed. 285. The findings of fact set forth, substantially, what has been hereinbefore rehearsed. The court found, as conclusions of law, that Daly's copyright was good and valid; that it covered and protected his railroad scene; that the acts of defendant in producing "After Dark," including its railroad scene, without plaintiff's consent, were in disregard of said copyright, and violated plaintiff's exclusive rights thereunder; that the damages recoverable for such violation would be as prescribed in section 4966, but that there could be no recovery on the proofs submitted, because there was no testimony before the court showing the number of infringing performances, except the record in the equity case, adopting the finding of the master, which finding was based on evidence extorted from the defendant by examination in such suit; that section 4966, although it used the word "damages" only, in reality imposed a penalty; that the two-year statute of limitations (section 4968) applied; and that evidence obtained from a party by means of a judicial proceeding must not be used against him for the enforcement of a penalty. Thereupon, and before judgment was entered, plaintiff moved for a new trial, or such other and further relief as might be just. On November 4, 1895, the court granted the motion, "to the extent that the cause be opened for the purpose of allowing either party to present additional testimony in regard to the number and times of the representations, if any there were, of the play 'After Dark,' by the defendant, within two years prior to the commencement of this suit." The cause came on before the same judge on April 9, 1896; and the plaintiff produced the testimony of various witnesses as to the number of times defendant had, within the period limited, produced "After Dark" with the railroad scene unaltered, i. e. with an independent rescuer. Defendant offered no proof, and the cause was submitted. On July 14, 1896, the court filed special findings of fact upon the new proofs, holding that "After Dark" had been publicly produced by defendant and his agents, without plaintiff's consent, for more than two years before August 23, 1893; that such performances took place at least 126 times between August 24, 1891, and October 5, 1892; and that after the

83 F.—64

latter date a change was made by the defendant in the representation of the railroad scene, whereby the infringement ceased. The court expressly stated that the evidence as to these performances, and all performances subsequent to August 24, 1891, "is entirely independent of the evidence obtained from the defendant by the plaintiff's examination of him in the accounting before the master in the equity suit mentioned in the prior findings of fact. No pleading or evidence of the defendant has been used or taken in evidence, in ascertaining any facts as to performances, or for the enforcement of any alleged liability in this case." Upon the new testimony, with the rest of the evidence, the court found, as a conclusion of law, that plaintiff was entitled to judgment of $50 for each of the 126 performances, amounting to the sum of $6,300, with costs. Judgment was duly entered for that sum, and defendant sued out this writ of error.

A. J. Dittenhoefer, for plaintiff in error.

Stephen H. Olin, for defendant in error.

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts). There are 34 assignments of error, but it will be necessary to discuss only those which are relied upon in the brief of plaintiff in error.

1. It is contended that the penalty is incurred only when substantially the whole of a copyrighted play is reproduced. This contention, however, has been already disposed of by this court. The penalty of the statute is imposed when "any dramatic composition for which a copyright has been obtained" is publicly performed without the consent of the owner. In Daly v. Webster, 1 U. S. App. 573, 4 C. C. A. 10, 56 Fed. 483, we held the railroad scene in "Under the Gaslight," considered by itself, apart from all the other acts and scenes in such play, to be a dramatic composition, and, as such, protected by the copyright which plaintiff had obtained; and no reason is shown for reversing or modifying that decision. When any one, without the owner's permission, publicly performs substantially that whole railroad scene, he substantially performs a dramatic composition which is covered by the owner's copyright,

2. It is contended that it was error "to exclude evidence offered by defendant that the manner of the rescue is not a material part of plaintiff's play." We have searched the record carefully, but in vain, for any such offer. It does appear that defendant "offered to prove that the play 'After Dark' drew as much money, and was as valuable, in a pecuniary or in a commercial sense, with the railroad scene performed in the manner not violative of plaintiff's rights, as held by the circuit court of appeals," and, to support his offer, asked a witness who had testified as to performances of "After Dark" this question:

"Will you state the difference in business between the railroad scene as performed when one character was rescued by another, and as performed when the character rescued himself by staggering off the track?"

The question was excluded, and exception reserved. If it were material and proper for defendant to show that the "manner of the rescue" was "not a material part" of "Under the Gaslight," he certainly would not show it by proving that the manner of the rescue was not a material part of the other play "After Dark."

3. It is next assigned as error that the court below permitted defendant's answer in the equity suit to be used against him in this action. The answer came in as part of the record in the equity suit. When such record was offered by plaintiff, defendant objected to its introduction on eight separate grounds, which were set forth specifically, but not on the ground that a sworn pleading of the defendant was offered against him in an action to enforce a penalty. Incidentally, it may be noted that, in the answer in the action at bar, defendant repeatedly refers to the record in the equity suit, and asks that the first decree of the circuit court therein, and the proofs upon which it was granted, be made a part of his answer. It may well be doubted whether he is now in a position to urge the assignment of error above set forth; but, if he were, it certainly should not avail him. The answer in the equity suit contained no admission obtained from the pleader by the equity court. It denies all the material allegations of the complaint. Undoubtedly, as pointed out in the brief, it does admit that performances of "After Dark" were given by defendant, but only of the version which did not infringe. In view of the fact that the record in the equity suit was admitted "for certain purposes" only, and the statement by the circuit judge that no pleading of the defendant has been used or taken in evidence in ascertaining any facts as to performances, or for the enforcement of any alleged liability in this case, we are unable to find any harmful error in the admission of the answer in the equity suit.

4. It is next assigned as error that the court below held that the decree in the equity suit of itself established plaintiff's cause of action, and was res adjudicata as to plaintiff's copyright and defendant's alleged infringement. Manifestly, the court below did not hold that the "decree in the equity suit of itself established plaintiff's cause." When that decree was the only evidence, it declined to find for the plaintiff. Nor is there anything to show that the court held that the equity decree was res adjudicata as to defendant's alleged infringement. The record in the equity suit was competent evidence of the fact that the railroad scene in "After Dark"—the unaltered version—was substantially identical, in words, actions, circumstances, and accessories, with the railroad scene in "Under the Gaslight"; and defendant offered no evidence to controvert it. The court, however, did hold that the validity of the copyright, being determined by the equity decree, was res adjudicata between the parties to the action at bar, and excluded evidence offered by defendant (being the same evidence considered in the equity suit) to show that plaintiff's railroad scene was not novel. In this there was no error. The question of validity was one of the issues in the equity suit, and that court adjudged that the copyright obtained by Daly on August 1, 1867, was good and valid, that he was the author of the dramatic composition entitled "Under the Gaslight," and that the railroad scene in such play was itself a dramatic composition, and protected by said copyright. To this equity suit, Daly and Brady were parties. The action at bar is not brought by the government, but by the individual whose rights have been trespassed upon, to recover the damages which the statute gives him from the individual who

has committed the trespass. Both parties to the action were parties to the suit, and, under familiar principles, a question at issue between them, which has been once finally decided by a court of competent jurisdiction, cannot be again contested between them in the same or any other court.

5. It is further contended that the court below committed error in limiting the defendant, upon the new trial, to proof as to the number of performances. The record fails to disclose that defendant offered any evidence at all on the second trial, or that any was excluded. The order disposing of the motion for new trial provided that such motion be "granted to the extent that the cause is opened for the purpose of allowing either party to present additional testimony in regard to the numbers and times of the representation, if any there were, of the play of 'After Dark' by the defendant." It certainly did not preclude the defendant from offering any testimony which might become necessary or expedient by reason of the change of situation produced by plaintiff's additional proof, or, indeed, from offering any which he had neglected to put in through oversight. Manifestly, this assignment of error is an afterthought. Had defendant had any further proof which he wished to put in, it must be assumed that he would have offered it.

6. It is next contended that the trial judge "erred in permitting the plaintiff upon the new trial to present the evidence of the number of performances which was obtained from the information given by the defendant under compulsion in the equity suit." There is nothing in the record which will enable us to say that any of the evidence presented on the second trial "was obtained from the information given in the equity suit." The counsel for plaintiff in error so asserts, but his brief contains no references to support such assertion. No witness was interrogated upon this point, and no proof of the assertion offered.

7. It is further contended that the performances given by defendant intermediate the decisions of the circuit court in the equity suit holding the copyright invalid, and the reversal by the court of appeals, were not willful violations of plaintiff's rights, and for that reason the statutory penalty was not incurred. The statute, however, provides that "any person publicly performing or representing," etc., shall be liable for the damages therein fixed. It does not make willfulness an essential element of the offense, and no authority to which we are referred calls for such a construction.

8. It is contended that plaintiff, by first proceeding in equity for an accounting for profits, made an election barring him from a recovery for penalties. In view of the fact that there was in the equity cause no accounting of profits, and no election to endeavor to obtain profits, and no finding and no adjudication upon the subject of profits, we are not satisfied that plaintiff made any election barring him from suing for damages or penalties.

9. The last assignment of error is to the finding of the court below that there were 126 infringing performances. This, however, was a special finding by the court, a jury being waived; and an appellate court cannot look into the evidence upon which the finding is based,

except for the purpose of ascertaining whether an error was committed in admitting or excluding testimony, and no such error is here assigned. The judgment of the circuit court is affirmed.