CHAPPELL & CO., Limited, et al. v. FIELDS et al.

(Circuit Court of Appeals, Second Circuit. January 13, 1914.)

No. 172.

1. COPYRIGHTS (§ 7*)—THEATRICALS—SCENE.

While the voice, motions, and postures of actors and mere stage business possess no literary quality and cannot be copyrighted, a scene possessing literary quality may be protected.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 5; Dec. Dig. § 7.*

Matter subject to copyright. See note to Cleland v. Thayer, 58 C. C. A. 273.]

2. COPYRIGHTS (§ 7*)—THEATRICALS—SCENE.

A copyrighted scene in a theatrical performance owned and controlled by complainants represented an old miller informing a meeting of English villagers of the danger of a French invasion, it being agreed that in case such a thing should happen a bell should be rung to call them together for resistance. A moving picture company then appears and arranges to take a moving picture representing Napoleon and French soldiers and a young girl beseeching Napoleon to release her sweetheart, who is about to be executed as a spy. The miller, seeing this, rings the bell, the villagers rally, and set upon the party which is being photographed for the picture. Defendants produced a play at the end of the first act of which there was a scene laid in California, in which a countryman warns others of the danger of a Japanese invasion, whereupon it is agreed that if such a thing occurred an alarm bell should be rung, so that the countryside might turn out to resist it. Then a moving picture company appears, arranging to take a picture of a Japanese general and troops and the effort of a woman to save a spy from execution by importuning the general. One of the countrymen, seeing this, rings an alarm bell, and the neighbors turn out and a fight ensues with the moving picture company. Held, that complainants' scene involved literary quality, was subject to copyright which was infringed by defendants' scene.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 5; Dec. Dig. § 7.*]

3. COPYRIGHTS (§ 85*)—DRAMATIC PERFORMANCE—PRELIMINARY INJUNCTION.

A preliminary injunction will be granted more readily to restrain the infringement of a copyright in dramatic productions than in other cases, since the delay involved in waiting for a final decree would generally amount to the denial of justice.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 78; Dec. Dig. § 85.*]

4. COPYRIGHTS (§ 34*)—ALIENS.

Copyright Act, March 4, 1909, c. 320, § 8, 35 Stat. 1077 (U. S. Comp. St. Supp. 1911, p. 1475), confers on aliens rights under United States copyrights when the state or country of which he is a citizen or subject grants similar rights to United States citizens, and declares that the existence of reciprocal conditions shall be determined by the President of the United States by proclamation made from time to time as the purpose of the act may require. Held, that where the President issued a proclamation stating that citizens of Great Britain were entitled to the benefit of the United States copyright laws, such proclamation was a conclusive determination that the laws of Great Britain permitted United States citizens reciprocal copyright privileges and the courts were bound to presume that such conditions continued to exist until a different proclamation was made.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 36; Dec. Dig. § 34.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Chappell & Co., Limited, and another, against Lew M. Fields and another. Judgment for complainants, and defendants appeal. Affirmed.

William Klein, of New York City (Julian Arthur Leve, of New York City, of counsel), for appellants.

William D. Leonard, of New York City (George H. Gilman, of New York City, of counsel), for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. Chappell & Co., Limited, of London, one of the complainants, bought of the German authors and composers the exclusive right to produce the musical comedy called "Filmzauber" in England, the United States, and Canada. They copyrighted in the United States the music and at least the dialogue of the scene, presently to be considered from the English adaption of the play as a dramatico-musical composition under the title "The Girl on the Film." The other complainant, Frohman, has become the owner of the exclusive right to produce the play in this country. The defendants are producing a comedy called "All Aboard," containing a scene which the complainants charge is an infringement of the Girl on the Film. In all other respects the two productions are entirely different.

In the second act of the Girl on the Film a scene occurs in which an old miller informs a meeting of English villagers of the danger of a French invasion, and it is agreed that in case such a thing happen a bell shall be rung to call them together for resistance. Then a moving picture company appears and arranges to take a moving picture representing Napoleon and French soldiers and a young girl beseeching Napoleon to release her sweetheart, who is about to be executed as a spy. The miller, seeing this, rings the bell, the villagers rally and set upon the party which is being photographed for the moving picture.

In the defendant's play, at the end of the first act, there is a scene laid in California in which a countryman warns others of the danger of a Japanese invasion, whereupon it is agreed that if such a thing occur an alarm bell shall be rung, so that the countryside may turn out to resist it. Then a moving picture company appears, arranging to take a picture of a Japanese general and troops and the effort of a woman to save a spy from execution by importuning the general. One of the countrymen, seeing this, rings the alarm bell. The neighbors turn out, and a fight ensues with the moving picture company.

[1] The idea of the scene in the Girl on the Film is shown to be quite novel. It is certainly reproduced in All Aboard with substantially the same dramatic incidents. While the voice, motions, and postures of actors and mere stage business may be imitated because they have no literary quality and cannot be copyrighted (Bloom v. Nixon [C. C.] 125 Fed. 977; Savage v. Hoffman [C. C.] 159 Fed. 584), a scene like the one under consideration has literary quality, and may be protected by copyright (Daly v. Palmer, 6 Blatchf. 264, Fed. Cas. No. 3,552; Daly v. Webster, 56 Fed. 483, 4 C. C. A. 10; Brady v.

210 F.—55

Daly, 83 Fed. 1007, 28 C. C. A. 253). We agree with Judge Hough in thinking that this scene was a subject of copyright, and that the defendants have infringed.

. [2, 3] It is, however, .contended that, because the defendants deny that they or the authors of the scene in All Aboard ever saw the Girl on the Film performed or ever read the book, and aver that the scene in All Aboard is an original and independent production, a preliminary injunction should not be granted. We are satisfied, however, that such authors must have at least heard of the scene. Preliminary injunctions are granted more readily in dramatic than in other cases because the delay involved in waiting for a final decree would generally amount to a denial of justice.

[4] Finally, the defendants contend that Chappell & Co., Limited, being a subject of the King of England, was not entitled to the protection of our copyright law. Section 8 of the Act of March 4, 1909, is as follows:

"Sec. 8 (Issue of, to author, assigns, etc.—alien rights.) That the author or proprietor of any work made the subject of copyright by this Act, or his executors, administrators, or assigns, shall have copyright for such work under the conditions and for the terms specified in this act: Provided, however, that the copyright secured by this act shall extend to the work of an author or proprietor who is a citizen or subject of a foreign state or nation, only:

"(a) When an alien author or proprietor shall be domiciled within the United States at the time of the first publication of his work; or

"(b) When the foreign state or nation of which such author or proprietor is a citizen or subject grants, either by treaty, convention, agreement, or law, to citizens of the United States the benefit of copyright on substantially the same basis as to its own citizens, or copyright protection substantially equal to the protection secured to such foreign author under this act or by treaty; or when such foreign state or nation is a party to an international agreement which provides for reciprocity in the granting of copyright, by the terms of which agreement the United States may, at its pleasure, become a party thereto.

"The existence of the reciprocal conditions aforesaid shall be determined by the President of the United States, by proclamation made from time to time as the purposes of this act may require."                    •

April 9, 1910, President Taft issued a proclamation stating that citizens of Great Britain are entitled to the benefit of our copyright law, with an exception not material in this case. This proclamation is conclusive evidence of the fact that Great Britain at that date gave our citizens the benefit of her copyright laws on substantially the same basis as to her own citizens, and the courts have no right to review it. Since that time Great Britain has made changes in her own law which the defendants say result in a denial to our citizens of substantially the same rights as her own citizens enjoy, and insist that the court should determine this question and act accordingly. Congress, in our opinion, has confided the whole subject to the Executive exclusively. The President is required, by proclamation, to determine from time to · time, as the purposes of the act may require, the existence of these reciprocal conditions. As no proclamation has been made since that of April 9, 1910, we are bound to presume that in the opinion of the Executive these conditions do still exist.

The decree is affirmed.