## DYMOW v. BOLTON et al.

(Circuit Court of Appeals, Second Circuit. April 5, 1926.)

No. 269.

**1. Copyrights ⬅53.**

Infringement of copyright is copying of some substantial and material part of that as to which statute affords protection.

**2. Copyrights ⬅4.**

Ideas which are inserted in copyrighted work are not protected by copyright.

**3. Copyrights ⬅4—Infringement of copyright does not exist, if same idea can be expressed in totally different manners, as copyright law protects means of expressing ideas.**

Copyright law protects the means of expressing idea, and as same idea can be expressed in plurality of totally different manners, plurality of copyrights may result, and no infringement will exist.

**4. Copyrights ⬅4.**

Protection accorded owner of copyright is of the intellectual product of the author.

**5. Copyrights ⬅53—Copying, to constitute infringement, must be able to be recognized by ordinary observation as having been taken from work of another.**

Copying, which is infringement of copyright, must be something which ordinary ob-

servation would cause to be recognized as hav-ing béen taken from work of another.

**6. Copyrights ⬦⟹7—Subsection of plot pre-senting ambitious girl, willing to have ambi-tion served by an ingenious young man, re-sulting in girl's gratification of ambition and requited affection on part of man, held not susceptible of copyright.**

Mere subsection of plot presenting ambi-tious girl, willing to have her ambition served by ingenious young man in financial straits, re-sulting in gratification of ambition of girl and requited affection on part of man, *held* not susceptible of copyright.

Appeal from the District Court of the United States for the Eastern District of New York.

Copyright infringement suit by Ossip Dymow against Guy Bolton and others. Judgment for plaintiff, and defendants ap-peal. Reversed and remanded, with direc-tions.

Dymow wrote a play in the Russian lan-guage, placing the scene in New York, and caused its episodes to show almost wholly against a background of Jewish society en-gaged in the cloak and suit industry. He then caused the play to be translated into English (apparently he could not do that himself), and this translation, with many of the stage directions still apparently in Rus-sian, was copyrighted.

Bolton is a playwright not wholly un-known, and evidently a person of experience in the theater craft. Dymow knew him, and in substance asked his aid respecting the pro-duction of Dymow's play, or some adaptation of it. Thus Bolton had physical possession of the translation of what Dymow had writ-ten. Bolton did not serve Dymow, and the latter's play was sent back to him—by or from whom is not very clear. The name giv-en to Dymow's effort is "Personality."

Some time later Bolton wrote, and with the other defendants produced, a play which he called "Polly Preferred." The plot of this play is displayed against a background of theatrical and "movie" life not unmixed with speculative financial adventure. There is no suggestion of either Jewish social life, or a Jewish business background. Further com-ment on the structure, likeness, and dissimi-larity of the two plays will be made in our opinion.

The court below held that "perhaps un-consciously defendant (Bolton) took the theme for his play after he had read 'Per-sonality' and received the suggestion there-from."

Judgment accordingly was given for plaintiff, and defendants appealed.

O'Brien, Malevinsky & Driscoll, of New York City (Walter C. Noyes and Francis L. Kohlman, both of New York City, of coun-sel), for appellants.

Samuel R. Golding, of New York City, for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). It has been pointed out that the protection of the statute extends to "all the copyrightable component parts of the work copyrighted," which phrase presup-poses that there may be much in what is pop-ularly called a copyrighted work as to which the statute affords no protection. Eggers v. Sun, etc., Corp. (C. C. A.) 263 F. 373.

[1] The same case shows that infringement is not a statutory phrase, but that by repeat-ed decisions infringement of copyright is ju-dicially held to consist in the copying of some substantial and material part of that as to which the statute affords protection. Cf. Wilson v. Haber (C. C. A.) 275 F. 346.

[2] One of the entities or things which every author tries to insert in his copyrighted work is a set of ideas; yet ideas as such are not protected. Holmes v. Hurst, 19 S. Ct. 606, 174 U. S. 82, 43 L. Ed. 904; Kalem Co. v. Harper Bros., 32 S. Ct. 20, 222 U. S. 55, 56 L. Ed. 92, Ann. Cas. 1913A, 1285.

[3] Just as a patent affords protection only to the means of reducing an inventive idea to practice, so the copyright law protects the means of expressing an idea; and it is as near the whole truth as generalization can usually reach that, if the same idea can be expressed in a plurality of totally different manners, a plurality of copyrights may result, and no infringement will exist.

If one compares two dramatic composi-tions, whether in forms suitable for the stage or for the library, what has been called the "fundamental plot," the "same old plot," or an "old story," can assume any author's dressing or adornment; that author can de-vise and use his own way of expressing that plot, and he will not infringe. This general proposition is illustrated in London v. Bio-graph Co., 231 F. 696, 145 C. C. A. 582; Eichel v. Marcin (D. C.) 241 F. 404; Sto-dart v. Mutual Corp. (D. C.) 249 F. 507.

[4] The theory is (however difficult may be its application at times) "that the protection accorded the owner of copyright is of the in-tellectual product of the author." King, etc., Syndicate v. Fleischer (C. C. A.) 299 F. 533, at page 536.

Admitting, now, that a plot, the mere concept of a situation around which to build and develop literary adornment, is not copyrightable, it is insisted that the court below was right in holding that Bolton had appropriated the "theme" of Dymow's work. "Theme" is not a word of art, and an examination of the cases will show that, where it has been used in decision writing, it means a great deal more than the jealousy motif on which the fabric of Othello is hung, or, to go to the other extreme of composition, the theorem of a proposition of Euclid. Thus Mayer, J., in Underhill v. Belasco (D. C.) 254 F. 838, at page 842, said in speaking of methods of decision: "The safest guide is always to determine what the fundamental theme is, and to see whether it has been appropriated."

But an examination of that and other cases will show that the inquiry actually made was always to ascertain what had been appropriated, if anything, and then decide whether the appropriation was (1) of copyrightable matter, and (2) was substantial.

If the appropriation complained of is of the "combination or series of dramatic events apart from the dialogue which makes up" a particular scene, reference may be had to Daly v. Webster, 56 F. 483, 4 C. C. A. 10; Dam v. Kirk Co., 175 F. 902, 99 C. C. A. 392, 41 L. R. A. (N. S.) 1002, 20 Ann. Cas. 1173; Chappell v. Fields, 210 F. 864, 127 C. C. A. 448. And it will be quite plain that no mere plot or so-called theme was protected by these decisions. They assert the legal proposition that there may be dramatic composition in the invention and arrangement of a series of events although the "dialogue [coincident with the events] is unimportant and as a work of art trivial." (56 F. at page 486, 4 C. C. A. 19.) But the fact findings were that a defendant playwright had "deliberately appropriated [plaintiff's] story and dramatized it" (175 F. at page 907, 99 C. C. A. 397), and that even a single scene of a play might display so marked a series of incidents productive of dramatic effect as to be singly worthy of copyright protection (210 F. at page 865, 127 C. C. A. 448).

What, then, is the extent of similarity existing between these two plays? In each is presented an ambitious girl of at least potential charm; who is willing to have her ambition served by an ingenious young man, in financial straits. In each the man, though by wholly different means, sails very close to the winds of finance and veracity in exploiting the girl as a mold of fashion (Dymow) or a "movie star" (Bolton). Result—gratification of ambition by girl, and requited affection on the man's part.

This incomplete skeleton the two plays have in common, but it is with real difficulty that the flesh and blood, the incidental, yet essential, adornment and trimming, of the plays can be cut away to show similarity between a few bones.

[5, 6] This difficulty is fatal to plaintiff's case; the copyright, like all statutes, is made for plain people; and that copying which is infringement must be something "which ordinary observation would cause to be recognized as having been taken from" the work of another. King Syndicate v. Fleischer (C. C. A.) 299 F. 533. It requires dissection rather than observation to discern any resemblance here. If there was copying (which we do not believe), it was permissible, because this mere subsection of a plot was not susceptible of copyright.

Decree reversed, with costs, and cause remanded, with directions to dismiss the bill, also with costs.