## BEIN v. WARNER BROS. PICTURES, Inc.
### No. 158.

Circuit Court of Appeals, Second Circuit.
July 20, 1939.

Julian T. Abeles, of New York City (Arnold J. Bernstein, of New York City, of counsel), for appellant.

Thomas & Friedman, of New York City (Stanleigh P. Friedman, Joseph D. Karp, and Harold Berkowitz, all of New York City, of counsel), for appellee.

Before L. HAND, CHASE, and PATTERSON, Circuit Judges.

PATTERSON, Circuit Judge.

The suit is for infringement of copyright. The one issue is whether the defendant infringed. The district judge after trial on the merits held that there was no infringement and dismissed the case.

The plaintiff wrote a novel, "Youth in Hell", and also a play, "Road Out of

Hell", both dealing with life in a reform school. He later wrote a revision of the play and called it "Little Old Boy". He copyrighted these works. He claims that the defendant's motion picture, "Mayor of Hell", is an infringement of all three. The defendant's picture also deals with life in a reform school. The plaintiff in 1931 came to an agreement with one Harris, a producer of plays, for the production of his play, and early in 1932 he worked on certain revisions with one Chodorov, an employee of Harris. Harris let his option to produce the play lapse. Chodorov in November of the same year went to work for the defendant and wrote the screen play from which the motion picture was made. Chodorov claimed that his screen play was based on a story about a reform school written by one Auster and purchased by the defendant, and not on the plaintiff's play. It being undisputed, however, that the plaintiff wrote a play about life in a reformatory, that Chodorov assisted him in revising it for production on the stage, and that Chodorov several months later wrote for the defendant a screen play about life in a reformatory, we are bound in common sense to scrutinize the Chodorov screen play closely for evidence of copying.

The plaintiff's play gives a bitter picture of life in a southern or western reformatory. The play opens with the boys in the reformatory. The plot gets under way in the latter part of the first act when the boy Lockett writes a letter of complaint to the governor, several others helping him. The letter is discovered by Leach, the brutal superintendent, who questions the boys in an effort to find out who wrote it. Barry, a newcomer and a lad of spirit, who had nothing to do with the letter, is suspected, and trouble for him is imminent when Lockett confesses. Under the lash he gives up the names of the boys who helped him. They also are brutally whipped by Leach. They hate Lockett for this, while Barry naturally becomes his firm friend. The whipping leads to a fight between Lockett and one of the boys. A guard comes up while the fight is at its height. Lockett in his excitement strikes the guard down with a hoe. The boys break loose, Lockett and Barry going together. Barry could have escaped but will not desert Lockett. They are discovered in a farmer's tool shed. Lockett rushes out, is fatally shot by a farmer and dies. The play ends with Barry being transferred from the reformatory to the penitentiary.

The defendant's motion picture opens with a gang of lawless boys in the city. Jimmy is the leader. The boys do damage to an automobile whose owner refuses their services to watch it. They steal from a small store and are caught. In court the next day there are touches of comedy as an Italian boy, a Jewish boy, a colored boy and Jimmy are sent to the reform school. At the reform school the superintendent, Thompson, is a cheap grafter and a stern disciplinarian. Dorothy the beautiful nurse, makes efforts for more humane treatment of the boys, but she makes no impression on Thompson. Then a tough racketeer, Patsy, who has political influence, takes charge. He falls in love with Dorothy and is persuaded to install a system of self-government. All goes nicely until Patsy is recalled to the city to attend to his rackets. He shoots a rival and goes into hiding for a time. Thompson resumes charge and puts the reformatory back on the old basis. He discharges Dorothy. Jimmy, who is the leader of the boys, protests and is locked up. The other boys, among them a sickly boy, steal food for him. A sneak tells on the sickly boy. The latter will not tell on the other boys, and Thompson locks him up in a cold room. He dies from exposure. His death touches off a rebellion in the school, and the boys put Thompson to trial for murder. Thompson in an attempted escape falls off a roof and dies. Then Patsy and Dorothy come back, the boys submit, and the play ends happily with Patsy and Dorothy in a kissing scene.

From the foregoing outline of the productions it is obvious that there is no correspondence in plot, characters or impressions. The correspondence comes to this, that both parties have used a background of reform school and that there is a touch of similarity in a few incidents and a few points of dialogue. Such incidents and dialogue are of trifling importance and are only the coincidences that one would expect in productions set against the same general background. The plaintiff evidently recognized that he had no case in his copyrighted matter, for he attempted in the district court to prove that he had orally imparted to Chodorov an uncopyrighted play, utterly different from his copyrighted productions but quite close to the defendant's motion picture. The district judge

held that the plaintiff's testimony as to this uncopyrighted play was untrue, and on appeal the plaintiff makes no claim to the alleged uncopyrighted play. So there is no merit in the plaintiff's claim that Chodorov appropriated his productions. On the other hand, there is a close similarity between the Chodorov screen play and the story by Auster. Chodorov was plainly telling the truth when he testified that in the main his screen play was derived from the story written by Auster and that he took nothing from the plaintiff. The Auster story was proved to have been an original work.

We have compared the defendant's motion picture with the plaintiff's play. There is even less resemblance between the defendant's motion picture and the plaintiff's novel. The defendant did not copy the plaintiff's works, and the district judge was right in dismissing the bill. Underhill v. Belasco, D.C., 254 F. 838; Dymow v. Bolton, 2 Cir., 11 F.2d 690; Nichols v. Universal Pictures Corporation, 2 Cir., 45 F.2d 119; Fendler v. Morosco, 253 N.Y. 281, 171 N.E. 56.

Affirmed.