## SOLOMON v. R. K. O. RADIO PICTURES, Inc., et al.

District Court, S. D. New York.
April 14, 1942.

Gustave B. Garfield, of New York City, for complainant.

Gordon E. Youngman, of New York City, for respondent R.K.O. Radio Pictures, Inc.

Mack F. Goldman, of New York City, for respondent Eddie Davis.

MANDELBAUM, District Judge.

This is a plagiarism suit against the defendants, R.K.O. Radio Pictures Inc. (R.K.O.) and Eddie Davis. These defendants are the only ones who were served with process and who have defended the action through separate counsel. The remaining defendants, Brooks, Veiller and Offner, have not been served.

The complaint charges that a motion picture entitled "Radio City Revels" produced by the defendant, R.K.O., infringes on the plaintiff's unproduced copyrighted play entitled "It Goes Through Here".

Prior to 1937, R.K.O. had contemplated the production of a motion picture which would involve the Rockefeller Center Development in New York City and which would bear the name "Radio City Revels". About June, 1937, Brooks and Davis were employed by R.K.O. to write a motion picture script based on an idea submitted by Brooks. The motion picture was completed in December, 1937, and was released in February, 1938.

The first important question to be considered is that of access. This issue relates to Brooks and Davis, for it is claimed that they were possessed of plaintiff's script from which they appropriated the material which subsequently found its way into the motion picture, "Radio City Revels". It is, however, conceded by the plaintiff, that R.K.O. was not aware that it was infringing on a copyrighted work and that such infringements would not have reasonably been foreseen. Plaintiff limits its claim for damages against R.K.O. in the sum of $5,000 (Sec. 25, subd. (b) of the Copyright Law, 17 U.S.C.A. § 25(b).

Plaintiff, who had some experience in script writing for radio, says that he conceived the idea of writing a play about a radio studio, the difficulties of writing radio scripts, and the deadline that was necessary to be met in order to have the script ready for broadcasting. The play was finally completed and copyrighted on October 29th, 1936. It was offered to Alex Yokel, then to George Abbott and Eddie Cantor. In the plaintiff's bill of particulars, he states that in Abbott's office, one Carl Frank was employed as a script examiner and that Frank related the substance of plaintiff's script to Matt Brooks and Eddie Davis. The defendants obtained affidavits both from Frank and Celia Linder of Abbott's office denying these assertions and they moved for summary judgment. The motion was denied on the basis of the existence of triable issues.

At the trial and for the first time since the inception of the suit, plaintiff completely abandoned his theory of access through Carl Frank and rested on a new claim. He says that he placed the script before Matt Brooks in the Warwick Hotel, where Brooks, Davis and Cantor resided in 1936, and that four years later, recognized Brooks in the lobby of the Jolson Theatre, as the man he gave the script to in 1936.

The defendants vigorously urge upon the court that this change is not only a last minute effort to establish access, but is vulnerable and unworthy of belief. They ask why the plaintiff did not take some step to apprise both the court and the defendants that he intended to assert his claim of access directly through Brooks. Why did he, in opposing the defendants' motion for summary judgment, still adhere to his original position of access through Frank, when he had already notified his counsel of having recognized Brooks in the Jolson Theatre in January, 1941? (The motion for summary judgment was heard in April, 1941). In response to these queries, plaintiff answered that he wanted to wait until Brooks was examined before trial in California, so that he would be sure of his new claim.

I have weighed these respective contentions and it seems to me that the defendants' queries have been unconvincingly answered. I, too, wonder what further identification of Brooks could be made, since the plaintiff was not present at the examination of Brooks in California. I find nothing in the cross-examination of Brooks regarding the delivery of the script by the plaintiff to Brooks in the Warwick Hotel in 1936.

It is my judgment that there has been a failure of proof, on the part of the plaintiff to establish access directly through Brooks and Davis by delivery of his script to Brooks. The fact that both Davis and Brooks were employed by Eddie Cantor in 1936 and also lived at the Warwick Hotel, gives rise at best to a suspicion that they may have read the script before it got to Cantor.

Defendants point out that even if access to plaintiff's script were to be assumed, there must be proof of copying. Further, assuming both access and copying, the latter must be substantial before the court can spell out an infringement. But, plaintiff, relying on Wilkie v. Santly Bros., D.C., 13 F.Supp. 136, affirmed 2 Cir., 91 F.2d 978, urges that even with direct proof of access lacking, a comparison of both play and the motion picture will show such vital similarities that they could not have been the result of mere accident or coincidence.

■ The court has read the play and has viewed the motion picture. In both works, the basic idea or theme is centered around a character who is possessed of a subconscious creative ability. Such idea, which is a mere subsection of a plot, irrespective of whether it is original or not, is incapable of protection, since ideas as such are not protected by the Copyright Law. Shipman v. R.K.O. Radio Pictures, 2 Cir., 100 F.2d 533–535, 536. The law, however, does protect the means of expressing such idea. In asserting this principle, the court in Dymow v. Bolton, 2 Cir., 11 F.2d 690, 691, said " * * * if the same idea can be expressed in a plurality of totally different manners, a plurality of copyrights may result, and no infringement will exist". See, also, Nichols v. Universal Pictures, 2 Cir., 45 F.2d 119; Bein v. Warner Bros. Pictures, 2 Cir., 105 F.2d 969. Cf. Sheldon v. Metro-Goldwyn Pictures Corp., 2 Cir., 81 F.2d 49.

■ The test to be applied is the net impression that the motion picture makes on the average person. Is the screen portrayal that of the plaintiff's play? I have resolved that the question should be answered in the negative. "It requires dissection rather than observation to discern any resemblance here". Dymow v. Bolton, supra.

■ That there are similarities between the two is conceded. But I have been impressed with the fact that the differences are far more striking than those similarities. Although the basic idea of both works is the same, they do differ materially in its development and expression. In the play, Funnyface Nelson is entirely aware of his ability and makes his living through that means. In the motion picture, Lester is unaware of his creative ability and the entire plot is built around that idea until the close of the film at which time Lester learns of his special talent. There are other vital differences in the development of the basic idea. In the film, not only are the songwriters completely helpless if Lester cannot sleep and produce material, but are also most interested in keeping from Lester the truth about his ability to create while asleep. This angle is non-existent in the play. As to the similarities in both works with respect to the methods of inducing sleep, it is obvious that the known devices employed for such purpose are limited and the plaintiff's claim on that score is without force. Not only are there differences in characterization of the various characters, but in both works we find characters which have no counterpart in each other. And finally, the development of the love interest in the motion picture which is an essential part of the development of the story differs materially from that of the play.

To restate, it appears to me that aside from a similarity in both works as to the subconscious ability to create, and the various methods of inducing sleep, the evidence does not justify a finding that any portion of the plaintiff's play was copied in the motion picture. I go one step further. Even if such copying were to be assumed, there was no substantial copying which would warrant a holding of unfair use or actionable infringement.

The plaintiff having failed to sustain the burden of proof, judgment is rendered in favor of the defendants, Eddie Davis

and R.K.O. The court has filed its own findings of fact and conclusions of law in accordance with the opinion.