**S. Robert TRALINS**

**v.**

**KAISER ALUMINUM & CHEMICAL CORP.,** The National Broadcasting Company, Hearst Radio, t/a W.B.A.L. T.V. and Worthington Miner, Franklin Schafner, Loring Mandell and Mayo Simon.

**Civ. No. 9575.**

United States District Court
D. Maryland.
March 31, 1958.

512

Benjamin Swogell, Baltimore, Md., for plaintiff.

Frank, Bernstein, Gutberlet & Conaway, George Gump and Howard A. Conaway, Baltimore, Md., for defendants.

R. DORSEY WATKINS, District Judge.

The amended complaint in this case claims $1,000,000 damages for alleged infringement by the defendants of the copyright of the plaintiff in and to a book entitled "Corporal Glory". The defendant, Kaiser Aluminum & Chemical Corporation, was a sponsor of a broadcast through the facilities of the National Broadcasting Company, of which the defendant, Hearst Radio, trading as WBAL TV, was an outlet. The broadcast, entitled "Army Game", was allegedly written by defendants Loring Mandell and Mayo Simon, and produced by the defendants, Worthington Miner and Franklin Schafner. Pursuant to express instructions from counsel for the plaintiff to the Clerk of the Court, summons has not been issued for the individual defendants. Plaintiff claims that the broadcast in question "infringed upon the copyright of the Plaintiff in that it used the original idea and theme as its basic story and plot. The principal characters as depicted in the television play were copied from the principal characters in the Plaintiff's novel."

The corporate defendants filed a motion under Rule 12(b)(6) of the Rules of Civil Procedure, 28 U.S.C., to dismiss this action or, in the alternative, to grant summary judgment for those defendants under Rule 56. The copyright book "Corporal Glory" was filed as an exhibit to the amended complaint. The corporate defendants filed with their motion a copy of the script of the television drama production entitled "Army Game". Pursuant to stipulation between counsel for the plaintiff and counsel for the corporate defendants, the court viewed the kinescope made of the alleged infringing drama "Army Game" in the presence of counsel for the parties; and pursuant to said stipulation the court has considered the kinescope in connection with its decision upon the motion for summary judgment.

The amended complaint while somewhat inartificial and failing to take advantage of the model provided by form 17 in the appendix to the Federal Rules of Civil Procedure, nevertheless adequately pleads a cause of action for alleged infringement of copyright. The motion to dismiss for failure to state a claim against the corporate defendants upon which relief can be granted, is therefore denied.

Perhaps stemming from Judge Learned Hand's suggestion in Nichols v. Universal Pictures Corporation, 2 Cir., 1930, 45 F.2d 119, 123, certiorari denied, 1931, 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795, that instead of reliance upon expert witnesses in copyright infringement cases, the court should tend to "stand upon the firmer, if more naive, ground of its considered impressions upon its own perusal", the propriety of the disposition of such cases by summary proceedings has become well recognized. Lowenfels v. Nathan, D.C.N.Y.1932, 2 F.Supp. 73, 74; Christianson v. West Pub. Co., 9 Cir., 1945, 149 F.2d 202, 203 and cases cited, footnote 2; Park v. Warner Bros., D.C.N.Y.1934, 8 F.Supp. 37, 38; Shipman v. R. K. O. Radio Pictures, D.C.1937, 20 F.Supp. 249, affirmed, 2 Cir., 1938, 100 F.2d 533; Lake v. Columbia Broadcast-

ing System, D.C.Cal.1956, 140 F.Supp. 707, 708; Dorsey v. Old Surety Life Insurance Co., 10 Cir., 1938, 98 F.2d 872, 873, 119 A.L.R. 1250; Lewis v. Kroger Company, D.C.W.Va.1952, 109 F.Supp. 484, 486.

Whether the court should first "ascertain what had been appropriated, if anything, and then decide whether the appropriation was (1) of copyrightable material, and (2) was substantial" [1] or whether the "originality" of the "literary property" should first be determined, [2] seems of little moment, since for purposes of appellate review it is desirable that both questions be considered. The court will first deal with the question of appropriation.

### Appropriation.

Since the amended complaint alleges use by the corporate defendants of the original idea and theme of plaintiff's copyrighted book and that the principal characters as depicted in the television play were copied from the principal characters in plaintiff's novel, the court is faced with the distasteful necessity of outlining the idea and theme of plaintiff's work, including some description of its principal characters, so that a comparison can be made with "Army Game".

In "Corporal Glory", the principal character is Corporal [3] Danny Salisman, a young man who enlisted in the Marine Corps for home-town glory but decides after three hours in combat area, that he would like to be "surveyed" out. He intentionally injures himself and during recuperation is able surreptitiously to read sufficiently from a medical book to decide that he will use fictitious migraine headaches as his vehicle for escape. He meets Kurt Bremen, a man of similar values, and while waiting for their medical survey, they, together, devise a plan to cheat their colleagues at black jack.

Kurt steals playing cards from another Marine, and Danny marks them. Kurt replaces them and they are subsequently put in play by the unsuspecting owner. At the second card session Danny "cleans" two of the players. He is accused of cheating and is attacked by Kurt to divert suspicion. The marked cards are impounded by the Captain but are stolen from his desk by Kurt and replaced with unmarked cards. The Captain does not notice this and his attempted demonstration at cheating by Danny fails. Before Danny can be brought up on another unrelated charge, his migraine headache complaints lead to his transfer to a hospital. He and his colleagues in the "psycho" ward restore their mutual self-respect through admissions and confessions that they are all fakers. Danny also finds an opportunity to take leave with Kurt, who has come to visit him, for a trip through a house of prostitution in Honolulu, Hawaii, the sordid details of which are primarily not left to the imagination.

Danny is notified that he will be shipped home for examination and while waiting for the ship to leave, he steals some medals. On shipboard Danny observes some minutely recorded clandestine romancing of an officer and a girl, and comes upon a murdered Jap prisoner.

Throughout the story, up to the landing of his ship in the States, Danny writes numerous letters to his girl friend Sarah whose body he has unsuccessfully sought before marriage and whose dowry is a matter of substantial interest to him. The letters, completely childish in expression, make Danny out a great hero and adviser to his nominal superiors. Sarah's letters are those of a trusting young girl, proud of the man she loves.

Ashore at Seattle, Danny continues his migraine headache complaints and secures an early medical examination. On

1. Dymow v. Bolton, 2 Cir., 1926, 11 F.2d 690, 692.

2. Yankwich, Originality in the Law of Intellectual Property, 1951, 11 F.R.D. 457.

3. No explanation is given, suggested, or occurs to the court as to how Danny became a Corporal.

72 hour leave, Danny picks up a Y.M.C.A. hostess and spends the week-end with her at her cousin's cabin in the mountains, most events being at least sufficiently detailed.

After several months Kurt joins Danny in the psycho ward. Kurt persuades Danny to borrow the hostess' auto. Kurt stages a store hold-up. Danny is arrested but is freed after two weeks' imprisonment when Kurt confesses and exonerates Danny. Sarah finally learns the truth and breaks with Danny. He confesses to the psychiatrist, who is not surprised at the truth. Danny then asks to be returned to active service but is "surveyed" out of the Marines as a man "more dangerous to the Marine Corps than is the enemy."

Throughout the book very frequent use is made of familiar Anglo-Saxon and slang three, four and five[4] letter words descriptive of the reproductive and excretory functions.

No respectable sponsor would endeavor to project the "theme" of "Corporal Glory" by way of television, and no responsible broadcasting system or company would broadcast such a theme.

In "Army Game" the principal character is Danny Scott. Another important character is Burt Schofield, brother of Danny's fiancee Holly. The correspondence of the Christian name and first letter of the surname in one case, the close approximation in another (Burt-Kurt), and the fact that Danny intends to and does get a medical discharge, represent the only elements of real correspondence between "Corporal Glory" and "Army Game".

In "Army Game" Danny's mother has used every effort of politics and influence to keep Danny out of the armed service and when, despite this, he is drafted, they agree before his induction that he will endeavor to secure a medical discharge, because "she needs him". This is intimated in the very first scene and fully developed in the course of the sketch.

The first day in the firing pit, Danny throws up his rifle when it discharges, and nearly kills one of his colleagues. He then starts screaming and writhing and is carried into the barracks, when the audience is given an insight to his thoughts which are that he is going to get out of the service, after which he will buy an auto and *Laugh, Laugh, Laugh*. He is then taken to the hospital. His Corporal and Sergeant are entirely out of sympathy with him. He is shown his gun, upon which he screams and sobs. He is slapped by the Sergeant and starts to lunge at him but is deterred by the thought that this would be stupid in view of his plan. He is slapped again, the Sergeant saying he will make a soldier of him. The Corporal then suggests putting Danny back in the firing pit the next day to train him as they do shy bird dogs. Danny is left in his bunk, his thoughts being that he is going to get out of the service and his only question is whether he has overdone his act on the first day.

The next day Danny is put in the firing pit repairing the end target. The intimation is that he is really trying but he loses control of himself, slips and starts to cry and moan. The Corporal requires another soldier to discharge his gun very close to Danny. The Corporal is called to account by the Captain and explains his conduct by claiming that Danny is faking. Danny tells the Captain that he never had any trouble before and does not know what is bothering him. His thought is that the Captain also cannot know; that the Captain will follow the "book" and that he will be sent to a psychiatrist. Danny is taken off duty and is sent to see the medical officer. He remarks to himself that everything is on schedule and going according to plan.

In the psychiatrist's office Danny admits that his mother was anxious to keep him out of the service. His thoughts

---

4. With a substitution of vowels or initial consonants, but in a manner to leave the intended word unmistakably clear.

were that the psychiatrist would like to analyze him but the Army would not sit still long enough and that they would let him out. The doctor points out that a person cannot fake an emotional state without being infected, and if Danny were, in fact, faking, he would be a sick person. Danny denies to himself that he is sick and is satisfied that he will get out of service. Burt is interviewed by the psychiatrist and Burt sticks up firmly for Danny, whose athletic prowess he had worshipped for years.

The psychiatrist reports to Danny's Captain that he is not sure whether Danny is a malingerer or sick. Danny did not hide his mother's efforts from the doctor but did conceal his athletic prowess as if he wanted the doctor to believe him to be defective. It was the doctor's impression that he wanted to be punished; to be sent home in disgrace and that this would punish his mother by punishing him. The Captain, fearing that a discharge would be the equivalent of a medal for malingering, assigns Danny to very unpleasant physical labor for a period of two weeks. At about the expiration of this time Danny's companions, who believe that he is faking and who resent this as well as the reflection upon them and upon their ability to get leave, start to rough him up. Burt partially comes to his defense but after being told by Danny that he does not need hospitalization, that he was "faking out" and that he and his mother had planned it all, starts to join with the group in manhandling Danny.

A general discharge, based upon mental unsuitability, is recommended. Danny telephones his mother that he is getting out; that their scheme has worked as planned, and that he is "fine" but that he did not want to see Holly.

Danny's squad prepares a letter known as "Danny Scott's Disgrace" in which some of the background is set forth. Burt asks Danny if he is "still for laughs?"; that Danny is great at games but too weak to be a soldier; says that Danny might think the rest were dumb

but they stuck to their jobs and that Burt, who had worshipped him for fifteen years, would not trade places with him.

Danny meets his mother and Holly in the processing room and gives the letter to his mother. She claims that it is not serious; that the others are just jealous of him and that he should ignore it. Danny asks whether it is not the truth. The mother states that it is very funny, just a "delicious joke." Danny then hands the letter to Holly. She realizes its implications and starts towards him, saying "he needs me." Burt tells her that Danny is sick and will be as long as any one tries to run him; that he will have to make the break all by himself. The mother, completely self-centered, does not realize Danny's condition and gloats that everything worked out as they planned and that they could now go home. The broadcast ends with Danny saying "Look at me! Look at what we've done! I'm ashamed! * * * And I was going to get out and put my arms around you and laugh * * * *and laugh!* Isn't that funny?"

■ The court finds as a fact, and concludes as a matter of law, that "Army Game" involves no substantial and material, if any, copying of or appropriation from "Corporal Glory", which is indispensable to infringement. Dymow v. Bolton, 2 Cir., 1926, 11 F.2d 690, 691; Harold Lloyd Corporation v. Witwer, 9 Cir., 1933, 65 F.2d 1, 4, dismissed per stipulation of counsel, 1933, 296 U.S. 669, 54 S.Ct. 94, 78 L.Ed. 1507; Lowenfels v. Nathan, D.C.N.Y.1932, 2 F.Supp. 73, 79; Twentieth Century-Fox Film Corporation v. Stonesifer, 9 Cir., 1944, 140 F.2d 579, 581; Eichel v. Marcin, D.C.N.Y. 1913, 241 F. 404, 409.

### Originality of "Corporal Glory".

■ The protection secured by the copyright act "is not a right to the use of certain words, because they are the common property of the human race, and are as little susceptible of private appropriation as air or sunlight; nor is it the right to ideas alone, since in the absence

of means of communicating them they are of value to no one but the author. But the right is to that arrangement of words which the author has selected to express his ideas." Holmes v. Hurst, 1899, 174 U.S. 82, 86, 19 S.Ct. 606, 607, 43 L.Ed. 904. Originality relates to the "literary expression of the idea rather than the idea itself * * *." Yankwich, Originality in the Law of Intellectual Property, 1951, 11 F.R.D. 457, 459. Copyright "gives no monopoly in the separate words, or in the ideas, conception, or facts expressed or described by the words. A copyright extends only to the arrangement of the words. A copyright does not give a monopoly in any incident in a play. Other authors have a right to exploit the facts, experiences, field of thought, and general ideas, provided they do not substantially copy a concrete form, in which the circumstances and ideas have been developed, arranged, and put into shape * * *" Eichel v. Marcin, D.C.N.Y.1913, 241 F. 404, 408–409.

On the dust jacket of "Corporal Glory" plaintiff is quoted as follows:

"I have tried to reach the masses of servicemen who continually talk about getting out of the service—and how it is possible for men to 'fake' their way out through the 'psycho' wards. *The theme I tried to portray is a basic human problem.* In one form or another, there is a little of Corporal Glory in most of us." (Emphasis supplied.)

The dust jacket continues:

" * * * Mr. Tralins has been a writer of essays, short stories, and articles for more than twelve years. Corporal Glory, his first novel, is based on some of the things he saw while he was with the Marines in World War II."

Plaintiff's basic complaint, that the broadcast "infringed upon the copyright of the Plaintiff in that it used the *original idea and theme* as its *basic story and plot.* The principal characters as depicted in the television play *were copied from the principal characters in the Plaintiff's novel*" [5] therefore relates to matters not within the compass of the Copyright Law.

An author may not, through copyright, appropriate and withdraw from the public domain (a) an idea and theme—Holmes v. Hurst, 1899, 174 U.S. 82, 86, 19 S.Ct. 606, 43 L.Ed. 904; Funkhouser v. Loew's, Inc., 8 Cir., 1954, 208 F.2d 185, 189, certiorari denied, 1954, 348 U.S. 843, 75 S.Ct. 64, 99 L.Ed. 664; rehearing denied, 1954, 348 U.S. 890, 75 S.Ct. 209, 99 L.Ed. 700; Dymow v. Bolton, 2 Cir., 1926, 11 F.2d 690, 692; Dorsey v. Old Surety Life Insurance Co., 10 Cir., 1938, 98 F.2d 872, 873, 119 A.L.R. 1250; Shipman v. R. K. O. Radio Pictures, D.C.N.Y.1937, 20 F.Supp. 249, 250, affirmed, 2 Cir., 1938, 100 F.2d 533, 536; Alexander v. Irving Trust Company, D.C. N.Y.1955, 132 F.Supp. 364, 367, affirmed 2 Cir., 1955, 228 F.2d 221, certiorari denied, 1956, 350 U.S. 996, 76 S.Ct. 545, 100 L.Ed. 860; Columbia Pictures Corp. v. National Broadcasting Company, D.C. Cal.1955, 137 F.Supp. 348, 353; (b) a plot—Dymow v. Bolton, 2 Cir., 1926, 11 F.2d 690, 692; Wiren v. Shubert Theatre Corp., D.C.N.Y.1933, 5 F.Supp. 358, 363, affirmed, 2 Cir., 1934, 70 F.2d 1023, certiorari denied, 1934, 293 U.S. 591, 55 S. Ct. 105, 79 L.Ed. 685, rehearing denied, 1934, 293 U.S. 631, 55 S.Ct. 140, 79 L.Ed. 716; Echevarria v. Warner Bros. Pictures, D.C.Cal.1935, 12 F.Supp. 632, 636; and (c) characters—Nichols v. Universal Pictures Corporation, 2 Cir., 1930, 45 F. 2d 119, 121, certiorari denied, 1931, 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795; Columbia Pictures Corporation v. National Broadcasting Co., D.C.Cal.1955, 137 F. Supp. 348, 353.

Therefore if, contrary to fact, "Army Game" used the idea, theme and basic characters of "Corporal Glory", there

---

5. Amended Complaint, Paragraph 7—emphasis supplied.

would have been no infringement of plaintiff's copyright.

Accordingly, defendant's motion for summary judgment is granted with costs including a reasonable counsel fee. U.S. C. Title 17, Sec. 116.