RUSH et al. v. OURSLER et al.

FAYDER et al. v. LEWIS et al.

District Court, S. D. New York.
March 28, 1930.

472

Hayes & Uihlein, of New York City (Ben A. Matthews, James V. Hayes and Morgan J. O'Brien, 2nd., all of New York City, of counsel), for plaintiffs Rush and Hagen.

Joseph Sterling, of New York City, for plaintiffs Fayder and Kane.

O'Brien, Malevinsky & Driscoll, of New York City (Arthur F. Driscoll and Benjamin Pepper, both of New York City, of counsel), for defendants Lewis and Harris.

Hays, St. John & Buckley, of New York City (Arthur Garfield Hays and Alan S. Hays, both of New York City, of counsel), for defendant Oursler.

Paul N. Turner, of New York City, for defendant Brentano.

THACHER, District Judge (after stating the facts as above).

An ordinary observer of the three plays here involved would undoubtedly form the impression that they were of the same type and had utilized the same material—that is, a shooting in a theater and the solution of the crime. But no impartial person would think that anything of importance in "The Spider" had been taken from either of the other two plays. The differences in the plays are more striking than their similarities, which relate only to the actual occurrence of the murder, and not to the solution of the mystery.

The inquiry always is: What, if anything, has been appropriated; and then, whether the appropriation was of copyrighted material and was substantial. Dymow v. Bolton (C. C. A.) 11 F.(2d) 690. The interruption of a stage performance by a murder in a crowded theater of a person seated in the audience is a dramatic incident which per se is not copyrightable, and no one could by obtaining a copyright withdraw from others the right to portray such an

occurrence in literary or dramatic form. The only right the owner of such a copyright would have is the right to prevent others from copying the form in which the author has chosen to dramatize such an occurrence for production upon the stage. It is not the content of dramatic or literary composition which is protected by copyright, but the form and sequence—"the incidental, yet essential, adornment and trimming." It is not the subject, but its treatment, that is protected.

It follows that all of the parties to this suit, regardless of priority in copyright, were free to write and produce plays in which one of the incidents was the occurrence of such a murder, whether they obtained the idea from one of the other plays or not. This being true, intrinsic evidence of similarities must be of doubtful value in the attempt to prove copying. When two authors portray the same occurrence, in the same setting, presupposing the presence of the same people in the same environment, acting under the same emotions, similarities of incident, unaccompanied by similarities in plot, are not persuasive evidence of copying. The authors having worked with the same material to construct the environment or setting in which the action is laid, such similarities are inevitable, and the products of such labor are comparable to paintings of the same scene made by different artists. Similarities in the one case are of little more significance than in the other. When in such a case similarities are found not in the plot or in its dramatic development or in the lines or action of the principal characters, but only in incidental details necessary to the environment or setting, there is no basis upon which to found a charge of plagiarism, and it may usually be said that such material is so unimportant and so trivial that its appropriation by copying, even if shown, would not be a substantial taking of copyrighted material. The unanimous opinion of the Court of Appeals in Fendler v. Morosco, 253 N. Y. 281, 171 N. E. 56 (March 18, 1930), is an instructive application of these principles.

What has been said is a correct characterization of the evidence offered by these plaintiffs in their efforts to show infringement. For the reasons stated it is thought insufficient to show substantial appropriation of copyrighted material. The defendants have met this proof by positive denials, and have explained most of the similarities as the natural development of their own ideas

in the writing and rewriting of "The Spider," which had its origin in "The Man with the Miracle Mind." It is true that in attempting to bring the audience itself into the dramatic action, and to create and continue the illusion of the occurrence of an actual murder during a theatrical performance, similarities in incidental detail were developed in the rewriting of "The Spider." These changes undoubtedly heightened and intensified the dramatic effect, and may fairly be assumed to have contributed largely to the success of the play. But in counting these similarities as proof of infringement there is double confusion—first, in assuming that in contradiction of the oral testimony they were not the natural and original development of a purpose to accomplish that effect; and, second, in assuming that the effect itself is something that can be protected by a copyright.

If in "The Spider" there is anything copied from either of the other two plays (a fact which I do not believe), it was of such insignificant and unsubstantial importance that it cannot be made the basis of a charge of plagiarism. Accordingly, the complaints in these actions will be dismissed, with costs and an allowance for counsel fees of $1,000 in each case.