## CARUTHERS v. R. K. O. RADIO PICTURES, Inc.

District Court, S. D. New York.
Aug. 14, 1937.

Supplemental Opinion Sept. 22, 1937.

Greenbaum, Wolff & Ernst, of New York City (Morris L. Ernst, William S. Savage, and Harriet F. Pilpel, all of New York City, of counsel), for defendant.

Irwin Halpern, of New York City, for plaintiff.

WOOLSEY, District Judge.

This motion is granted and the defendant may have a decree dismissing the complaint, with costs, which, in pursuance of the power given to me by section 40 of the Copyright Act, title 17, United States Code, § 40 (17 U.S.C.A. § 40), will include reasonable counsel fees.

I. This suit was first brought in the New York Supreme Court for New York county. The plaintiff is a citizen of New York state and the defendant a corporation of the state of Delaware. The defendant duly removed the cause to this court.

II. The plaintiff claims to be the owner of the common-law copyright to an unpublished manuscript called "The Sooners," dealing, inter alia, with the opening up to settlement of, and the early days in, the territory now constituting the state of Oklahoma.

The defendant's moving picture play "Cimarron," based on the well-known novel by Miss Edna Ferber, which also deals with the first settlement and early days in Oklahoma, is claimed by the plaintiff to be an

infringement of his common-law copyright in "The Sooners."

The motion to dismiss is based on the practice followed in Lowenfels v. Nathan (D.C.) 2 F.Supp. 73, 74, for the moving picture and the cutting continuity thereof have, by stipulation, been incorporated as part of the complaint herein.

III. At my request, both parties prepared and submitted to me summaries of plaintiff's copyrighted manuscript work, "The Sooners," and of defendant's picture, "Cimarron." These summaries are ordered filed with the papers in this cause and are to be deemed incorporated by reference in this opinion.

I have read the manuscript of "The Sooners" and the cutting continuity of "Cimarron" several times, and, in the presence of counsel for both parties, have seen "Cimarron" on the screen, at which time I made notes of my impressions of it.

I do not find any basis for the plaintiff's claim of literary larceny.

IV. The principal point of resemblance between the plaintiff's manuscript and the picture is that the locale of the latter part of the manuscript and of the picture are both in Oklahoma, and that they both deal with the opening of the territory of that state to occupation by settlers, an occasion of the impact of history on the public domain of land which certainly must be deemed within the public domain of letters.

There is not and is not claimed to have been any copying of the plaintiff's manuscript and the characters therein are without such distinctive qualities as would be a sine qua non of their copyrightability. Cf. Nichols v. Universal Pictures Corporation et al., 45 F.(2d) 119, 121 (C.C.A.2).

The incident mentioned in "The Sooners" and shown in "Cimarron" are certainly, with one exception, familiar to all readers of stories of the western frontier and the rough life led thereon by its early settlers.

The exception to which I refer is the episode in "The Sooners" of the little negro boy Percy, who, whilst fanning a dinner table to keep away flies, becomes so absorbed in the talk of the diners that by mistake he strikes one of the guests on the side of the head with his fan. This episode becomes to the narrator a mere memory of the faux pas of a little negro who was the son of a good cook. It has no functional

relationship whatever to the development of the story of "The Sooners."

In "Cimarron," Isaiah, a little negro, who, when fanning flies from a swing or cradle above the dinner table, gets interested in the conversation, overbalances, and falls into a frosted cake. It is he who succeeds in following the hero of "Cimarron," Yancey Cravat, into the wilderness, by hiding in a rug during the early part of the wagon journey thereto. When found, he comes to be a valued part of the family until his death. These two episodes of the little negro boys have been so much emphasized by the plaintiff, as proof of literary larceny, that I am giving them far more attention that they really deserve in order to explain their true status in this cause.

The inquiry in causes of this kind when access is proved, or admitted, as it is here for the purposes of this motion, is always: (1) What, if anything, the defendant has appropriated; (2) if he did appropriate anything, whether what he took was copyrightable material; and (3) if so, whether it was a substantial and material part of the copyrighted work, playing a role of consequence therein. Cf. Dymow v. Bolton, 11 F.(2d) 690, 691 (C.C.A.2); Wilson v. Haber Bros., 275 F. 346, 347 (C.C.A.2); Rush v. Oursler (D.C.) 39 F.(2d) 468, 472; Chatterton v. Cave, 3 App.Cases 497; Drone on Copyright at page 415.

It was, as I understand, only because the Court of Appeals considered that what was borrowed by the defendant was essential to the stories in both plaintiff's play and the defendant's picture that I was reversed in Sheldon v. Metro-Goldwyn Pictures Corporation, et al. (C.C.A.) 81 F.(2d) 49, 55.

Even if the defendant had the episode of Isaiah and the cake suggested to it by the episode of Percy and the fan, it would not constitute any basis for a decree in the plaintiff's favor, for the episode of Percy is merely glanced at as a supposedly comic accretion to the story of the manuscript, and is not intrinsic to the development thereof.

As courts have repeatedly said, ideas as such are not copyrightable. Dymow v. Bolton (C.C.A.) 11 F.(2d) 690, 691. This is also true of the supposed facts of history which necessarily must be dealt with in a similar manner by all historians. Cf. Dr. Samuel Johnson on Plagiarism, The

908

Adventurer, No. 95 (1753), quoted in Lewys v. O'Neill (D.C.) 49 F.(2d) 603, 606.

■ If under the theory of access, implicit in the procedure here followed, aught may be deemed to have been taken by the defendant from the plaintiff, it was either ideas or other material which was not copyrightable, or material which was so unsubstantial and so unimportant to the essential structure of the plaintiff's work as to be a wholly improper foundation for the drastic remedy which the plaintiff seeks herein.

V. The decree dismissing the complaint must carry costs, which, as above indicated, will include a reasonable counsel fee to be fixed, in accordance with the canons of charges which I suggested in Re Osofsky (C.C.A.) 50 F.(2d) 925, before the costs are taxed, and before the final decree dismissing the complaint is noticed for settlement.

Let the attorneys for the defendant prepare and serve, with three days' notice, on the plaintiff's attorney a petition stating the amount of counsel fees claimed by the defendant herein, and send it to me through the clerk.

After these fees are fixed by me, the costs may be taxed, and a final decree submitted through the clerk's office to me for signature also on three days' notice.

### Supplement Opinion.

On petition filed by defendant's counsel for an allowance of attorneys fees as costs in pursuance of the foregoing opinion on the merits of the motion.

This petition is in all respects denied on jurisdictional grounds.

I. On August 14, 1937, I handed down a memorandum opinion in this cause wherein I granted a motion to dismiss the complaint, with costs to the defendant.

In my decision I stated that I would allow reasonable counsel fees as part of the defendant's costs, "in pursuance of the power given to me by section 40 of the Copyright Act, title 17 U. S. Code § 40 (17 U.S.C.A. § 40)."

On or about September 18, 1937, a petition, verified September 7, 1937, asking me to fix the attorneys' fees to be allowed to the defendant was submitted to me in pursuance of a request contained at the end of my said opinion.

■■ II. It occurred to me as I was re-reading my opinion in this connection, that, as the instant suit was based on a claim of common-law copyright, removed by the defendant, on the ground of diversity of citizenship, from the New York Supreme Court, it might not be included in the ambit of section 40 of the Copyright Act, and that, therefore, I might not have the power to allow the defendant attorneys' fees, as I had stated in my opinion.

A re-examination of section 40 (17 U. S.C.A. § 40) showed me that I did not have that power, for the reason that the said section is limited to "all actions, suits, or proceedings under this title," i. e., the Copyright Act. Proceedings of all kinds under that act are exclusively within federal jurisdiction, because they are brought to enforce the statutory monopolies given thereby for limited periods to authors, artists, and composers, on certain conditions, in pursuance of the constitutional power of the Congress, contained in article 1, § 8, of the Constitution of the United States, "to promote the progress of science and useful arts." American Tobacco Company v. Werckmeister, 207 U.S. 284, 291, 28 S. Ct. 72, 74, 52 L.Ed. 208, 12 Ann.Cas. 595.

I think, therefore, that a suit founded on a claim of common-law copyright, as is this one, is clearly not a suit to which the provisions of section 40 may be applied.

Indeed, this cause, wherein the jurisdiction of this court is based solely on the accident of diversity of citizenship, is no more governed by section 40 of the Copyright Act (17 U.S.C.A. § 40) than any other cause of similarly grounded jurisdiction.

III. Therefore, I find that I exceeded my jurisdiction by providing in my opinion, on the merits hereof, for attorneys' fees as part of the defendant's costs herein.

■ Having thus become aware of my jurisdictional excess, of my own accord, as a judge is bound to do when such a question comes to his attention, I both raise and sustain the objection to my previous ruling. However, it is not without reluctance that I discharge this duty of correcting my jurisdictional error, for I think that the allowance of fees to the successful party under section 40 of the Copyright Act constitutes a sanction which tends to be a deterrent both on infringers of copyright, and on wholly unfounded copyright claims of

which the instant cause furnishes, it seems to me, a conspicuous example.

IV. My memorandum opinion of August 14, 1937, must therefore be deemed to be, and it hereby is, corrected by the striking out of all reference to the allowance of fees to attorneys both in the decision at the commencement thereof, and in paragraph V at the end thereof; and the decree to be entered herein will provide for a dismissal of the complaint with the usual bill of costs only.