Morris Bertram BURNETT, also known as Murray Burnett, and Frederick Stephani, Plaintiffs,

v.

Salvatore LAMBINO, also known as Evan Hunter, Simon and Schuster, Inc., Metro-Goldwyn-Mayer, Inc., and Pocket Books, Inc., Defendants.

United States District Court
S. D. New York.
June 11, 1962.

518

Blumberg, Singer, Ross & Gordon, New York City, Leon Singer, Fred Newman, and Richard B. Rodman, New York City, of counsel, for plaintiffs.

Sam Rosenblum, New York City, for defendant Salvatore Lambino.

Philips, Nizer, Benjamin, Krim & Ballon, New York City, Simon Rose and Albert F. Smith, New York City, of counsel, for defendant Metro-Goldwyn-Mayer, Inc.

Brennan, London & Buttenwieser, New York City, Ephraim London, New York City, of counsel, for defendants Simon and Schuster, Inc. and Pocket Books, Inc.

FEINBERG, District Judge.

This is an application by two prevailing defendants in a copyright infringement action for an award of counsel fees under 17 U.S.C. § 116. Plaintiffs in the action were Morris B. Burnett and Frederick Stephani; defendants were Salvatore Lambino, who uses the pen name of Evan Hunter, Simon and Schuster, Inc., Pocket Books, Inc. and Metro-Goldwyn-Mayer, Inc. ("MGM"). The facts are set forth in my prior opinion, in which I found that defendants were entitled to a judgment dismissing the complaint. Burnett v. Lambino et al., 204 F.Supp. 327 (S.D.N.Y.1962). By stipulation, consideration of defendants' request for counsel fees was deferred pending a resolution of the main issues. Thereafter, MGM and Simon and Schuster submitted affidavits in support of their applications and plaintiffs submitted an affidavit in opposition.

Under the discretionary power vested in the court by 17 U.S.C. § 116, I will award the amount of $2,000 to defendant MGM and $2,800 to defendant Simon and Schuster as attorneys' fees.

In response to the application for attorneys' fees, plaintiffs have argued that fees should not be awarded and that in any event defendants are not entitled to attorneys' fees to the extent that plaintiffs' claims were based upon their common law rights. Caruthers v. R.K.O. Radio Pictures, Inc., 20 F.Supp. 906, 908 (S.D.N.Y.1937).

With regard to the first contention, my ruling is that fees should be awarded. While I may not be prepared to say that the claim of plagiarism in this case was "wholly synthetic," Lewys v. O'Neill, 49 F.2d 603, 618 (S.D.N.Y. 1931), or "quite fantastic," Rose v. Connelly, 38 F.Supp. 54, 55 (S.D.N.Y.1941), I do believe that the asserted claim of

infringement was so demonstrably lacking in merit that bringing it was clearly unreasonable. Cloth v. Hyman, 146 F. Supp. 185, 193 (S.D.N.Y.1956). Plaintiffs' case rested ultimately on alleged showings of similarities which ranged from the patently erroneous to the ridiculous or involved palpable trivialities. The only legal issues presented were raised by the defendants; otherwise the case rested on a factual determination of the suggested similarities. Therefore, while "provision for attorney's fees * * * has been sparingly used and the amounts awarded modest," Orgel v. Clark Boardman Co., 301 F.2d 119, 122 (2 Cir. 1962), on facts such as these one should not be allowed to charge plagiarism with virtual impunity. Cf. Rose v. Bourne, Inc., 176 F.Supp. 605 (S.D.N.Y. 1959), aff'd 279 F.2d 79 (2 Cir. 1960). See McCormick, Damages, 255–259 (1935).

■■ With regard to the second contention, plaintiffs did assert common law rights based upon "Hickory Stick" and it appears that plaintiffs are correct that attorneys' fees are not recoverable in an action based upon infringement of a common law copyright. However, it should be noted that plaintiffs strongly urged the position at trial that the copyright on "Shadows" also protected "Hickory Stick."[1] Taking into account all the questions in the case and the intertwining of those relating to the common law copyright and those relating to statutory rights, it seems to me that an equitable allocation of attorneys' fees is 80 per cent to defense of the statutory claims and 20 per cent to the defense of common law claims. Eisman v. Samuel Goldwyn, Inc., 23 F.Supp. 519, 521 (S.D. N.Y.1938), rev'd on other grounds, 104 F.2d 661 (2 Cir. 1939).

■ Were there no allocation problem, I would fix the amounts to be awarded as attorneys' fees at $2,500 for MGM and $3,500 for Simon and Schuster, who had the main burden of conducting the defense at trial. The allocation explained above reduces the award to each defendant by one-fifth, or a net of $2,000 to MGM and $2,800 to Simon and Schuster.

■ In fixing these amounts I have considered the time necessarily spent by defendants' attorneys in thorough trial preparation, which included extensive analysis of the works involved[2], taking the depositions of plaintiffs over several days[3], attending at the examination before trial of Peter Schwed, drafting of answers, two pre-trial motions, pre-trial conferences, and extensive trial briefing. The trial itself consumed about three and one-half days; the transcript of the trial is 472 pages long. Counsel also prepared proposed findings of fact for the Court. I have also considered the skill demonstrated by defendants' attorneys, their professional standing and reputation, and the monetary amount potentially involved.[4]

Accordingly, defendants may recover from plaintiffs $4,800, which is to be included as part of the costs allowed to the prevailing parties, to be taxed severally to the defendants.

Settle order on notice.

1. See plaintiffs' reply memorandum, Point II. "Hickory Stick," which was not copyrighted, is characterized by plaintiffs as a "rewritten version" of "Shadows." Plaintiffs' proposed Findings of Fact, par. 9.

2. Scripts of "A Diller A Dollar," "Hickory Stick" and "Shadows In The City," film continuity for the motion picture "The Blackboard Jungle," the novel "The Blackboard Jungle" and author Evan Hunter's working notes, sketches, drafts and his correspondence.

3. The transcript of these depositions runs to 562 pages.

4. Simon and Schuster estimates that more than $9 million was realized from the exhibition of the film, more than two and one-half million copies of the novel were sold by Pocket Books, Inc., and its ultimate liability, under its agreement to indemify both Pocket Books, Inc. and MGM, "could have exceeded a million and a half dollars." (Affidavit in support of Simon and Shuster's application for attorneys' fees, par. 5.) See McConnor v. Kaufman, 57 U.S.P.Q. 140 (S.D.N.Y.1943).