**FUNKHOUSER  v.  LOEW'S, Inc.**
No. 14798.

United States Court of Appeals,
Eighth Circuit.

Dec. 11, 1953.

Rehearing Denied Jan. 5, 1954.

J. M. Loomis and Claude A. Fishburn, Kansas City, Mo., for appellant.

Maurice J. O'Sullivan, Kansas City, Mo. (John G. Killiger, Jr., and Samuel D. Cohen, New York City, on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

WOODROUGH, Circuit Judge.

Clifford Funkhouser brought this action for infringement and plagiarism in the United States District Court against Loew's, Inc., seeking to recover damages in excess of $2,000,000. He alleged that defendant's motion picture photoplay, "The Harvey Girls", infringed upon and was copied from two literary compositions belonging to plaintiff, his copyrighted work entitled "Cupid Rides the Rails" and his unpublished manuscript "Old John Santa Fe". Defendant denied that it had copied from plaintiff's works and alleged that the dramatization of the motion picture play "The Harvey Girls" was produced by it from an original literary composition owned by defendant. After a lengthy trial to the court in which an estimated 500,000 words were received in evidence in the form of testimony, depositions, manuscripts, novels, magazine publications, etc., the court found "upon a fair comparison of the respective works of plaintiff and defendant under applicable rules of law that no substantial or material parts of plaintiff's literary material are copied in [defendant's] photoplay", and entered judgment for the defendant. The plaintiff appeals.

He contends that the trial court erred (1) in failing to find that appellee's motion picture "The Harvey Girls" was an infringement of appellant's works; (2) in finding that, although appellee had access to appellant's works, it did not copy such works; (3) in finding that appellant's story, "Cupid Rides the Rails", was based upon historical data; that appellant intended to dramatize the Santa Fe Railroad and not the Harvey girls in his stories; and that the subjects treated in appellant's works are in the public domain and therefore no one has the exclusive use of them; (4) in failing to find that plaintiff's stories were entirely original; and (5) in failing to find that appellant was entitled to damages for infringement.

All of the alleged errors are directed toward the conclusions drawn from the evidence by the trial court, and charge, in effect, that the findings are not supported by the evidence. It is important to note that defendant's evidence was presented exclusively by depositions and that the verbal testimony on the part of plaintiff, which was directed mainly toward proving access, was not substantially controverted. The greater portion of the evidence consisted of the manuscripts, novels, and the movie itself, and determination of the action for infringement was sought upon a comparison of the plaintiff's works and the alleged offending vehicle. The trial court recognized that there were some matters as to which there was some general similarity between plaintiff's literary compositions and defendant's movie but the trial court was convinced no copying had been done by any one who had anything to do with the composition and production of the movie sufficient to constitute infringement.

The plaintiff was a former "boomer" (an itinerant railroad worker) of the Atchison, Topeka & Santa Fe Railroad Company. He also had some experience in newspaper work and had written several short stories for publication. In 1939, he collaborated with Lyman Anson in writing a story which they called "Cupid Rides the Rails". This story concerned railroad life and the activities of the boomers. The setting for the story was in a southwestern desert town called LaNada. In the story a new Fred Harvey eating house is being opened in LaNada and a group of Harvey Girls (waitresses who work in the Harvey Houses) arrive to take up their duties. Throughout the story the Harvey Girls, who are favorably presented, supply a romantic touch because, according to a popular boomer slogan of the time, "there were no ladies west of Dodge City—No women west of Albuquerque." Plaintiff and Anson succeeded in selling

their story, "Cupid Rides the Rails", to the American Mercury magazine, which published it in its September, 1940, issue under the same title. American Mercury secured a copyright of the story and assigned the same to plaintiff and Anson. Anson later sold his interest under the copyright to plaintiff and is not a party to this action. A condensation of the story appeared in the November, 1940, issue of Readers Digest under the title, "Fred Harvey Girls—Civilizers of the Southwest", which appellant claims to have suggested. The representatives of the Harvey family and the Harvey company were pleased with this favorable publicity and Paramount Pictures became interested in the story as material for a future motion picture. Plaintiff and Anson met with representatives of the Fred Harvey Restaurant System and the Santa Fe Railroad and discussed the possibilities of a movie based on the story. They wrote a manuscript of this story for movie purposes and changed the title to "Old John Santa Fe". Copies of "Old John Santa Fe" were sent to the Harvey people and the Santa Fe Railroad and also to appellant's agent in New York, who in turn submitted them to Paramount Pictures and appellee. Appellee's New York office prepared a synopsis of "Old John Santa Fe" and forwarded it to California for examination and recommendation by its movie script writers. Defendant and Paramount Pictures both rejected the story. Whether the copies of the manuscript were returned to appellant is uncertain under the evidence. At any rate, defendant retained the synopsis of the story made by its New York office and copies of the manuscript were retained by the Harvey representatives and the Santa Fe Railroad Company. There was no doubt that officers and agents of defendant had had access to plaintiff's compositions.

In support of its claim that the motion picture, "The Harvey Girls", was produced from a literary composition owned by it, defendant introduced evidence tending to show that as early as 1936 William Rankin and Eleanore Griffin cooperated in writing a story called "Susannah Was a Lady" and submitted it to appellee for approval as material for a motion picture. "Susannah Was a Lady" was the story of a young woman who, being disappointed in a love affair, decides to abandon her chosen musical career and become a Harvey Girl. The setting for this story is a southwestern desert town called Flagstone, which at that time was "a wild and wide-open spot". The story describes the Harvey House where Susannah worked, the service it rendered, and its civilizing influence on the community. Susannah and the other Harvey Girls are definitely the heroines of the story, eventually marrying and settling in the community. This story was promptly rejected by appellee as unsuitable for a movie. In 1937, Rankin rewrote the story and submitted it to defendant under the title "Parade to Empire". It was again rejected. Rankin and Griffin then took the two stories, "Susannah Was a Lady" and "Parade to Empire", revised and rewrote them and submitted the new story, called "The Harvey Girls", to appellee in October, 1941. Appellee thereupon decided that "The Harvey Girls" story could be used as a basis for a movie and purchased said story from Rankin and Griffin, together with their other manuscripts, "Susannah Was a Lady" and "Parade to Empire". Appellee then hired Samuel Hopkins Adams, a well-known writer, to write a novel called "The Harvey Girls", based on the materials purchased from Rankin and Griffin. Adams called upon the Harvey people and the Santa Fe Railroad and obtained much factual information for his story. His novel, "The Harvey Girls", was completed and was published by Random House in 1942. Defendant received an assignment of the copyright to the book from the author in the same year. This novel is a romantic story, interspersed with historical facts, about the early days of the Harvey System of eating houses and about its waitresses, the Harvey Girls. Although Adams created

a new cast of characters and necessarily added much to the plot in writing the novel, the same western background pervades the story as it did in Rankin's and Griffin's works. The Harvey Girls remained the heroines in the novel. In 1943 defendant decided to produce a musical motion picture based on the novel by Adams. Assistance and cooperation was received by defendant from the Harvey people and the Santa Fe Railroad in the adaptation and production of the picture. It was not, however, until the Harvey people were apprised of the songs to be used, that they gave their consent to the production of the picture. Adams' novel was too long and complicated to be used for the musical production and consequently the plot had to be revised and rearranged to a great extent. For that reason appellee's movie, "The Harvey Girls", does not parallel too closely the novel by Adams. Also, approximately one-third of the actual movie time is consumed by music and songs which, of course, were entirely original and were not in the novel.

Appellant does not claim that Adams' novel, "The Harvey Girls", infringed upon or was copied from his copyrighted work, "Cupid Rides the Rails", or his unpublished manuscript, "Old John Santa Fe". His charge of infringement is directed solely at appellee's motion picture, "The Harvey Girls", as the offending vehicle.

The court below wrote an exhaustive opinion meticulously reviewing the origins, the plot, setting, scenes and characters of the motion picture, the Adams novel, plaintiff's two literary works, and the manuscripts of Griffin and Rankin. See 108 F.Supp. 476. The court further made a detailed analysis and comparison of the individual characters in the several works, pointing out the similarities and differences between them. In the wake of such a critical review we do not feel that another lengthy discussion of the characters, setting, and plot of the various works is either necessary or warranted here. We find no substantial in-accuracies in the trial court's review. We are guided and bound by the rule that the findings of the trial court will not be set aside on appeal unless clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. We are also mindful that the test used to determine infringement in cases of this kind is whether ordinary observation of the motion picture photoplay would cause it to be recognized as a picturization·of the compositions alleged to have been copied, and not whether by some hypercritical dissection of sentences and incidents seeming similarities are shown to exist. Kustoff v. Chaplin, 9 Cir., 120 F.2d 551; Twentieth Century-Fox Film Corp. v. Stonesifer, 9 Cir., 1944, 140 F.2d 579.

1 & 2. As to the charge that the lower court erred in finding and holding that appellee's movie, "The Harvey Girls", did not infringe upon and was not copied from appellant's stories, "Cupid Rides the Rails" and "Old John Santa Fe", it is observed the trial court read appellant's literary compositions and twice viewed the motion picture photoplay. It recognized that there were similar incidents in the productions, but such similarities were due to the nature of the subject matter and not to copying. Both the motion picture and plaintiff's story "Old John Santa Fe" were set in the same geographical area and both had the typical western background. The desert town of Sandrock in defendant's motion picture and the desert town of LaNada in appellant's story "Old John Santa Fe" parallel in many respects. Both had sandy streets and the usual false-fronted buildings. It would be novel indeed, though perhaps not particularly satisfying, to view a motion picture portrayal of the old west without such traditional western type towns, false-fronted buildings, hitching posts, etc. We are not impressed with appellant's argument that similarity of setting and background in the two productions affords any proof of copying. His further contention that the songs sung in the movie were pirated from his

manuscripts we consider quite untenable. Appellant's stories did not contain any songs, so obviously there was no copying of the words as such. His argument is that the songs were inspired by ideas or words contained in his stories. For example, he argues that the song, "My Intuition", was inspired by the following words contained in "Old John Santa Fe": "With a flash of intuition, Mary paints the future of LaNada, pictures the advantage of growing up in this part of the country, helping develop the wilderness into a civilized community with nice homes, laws, etc." Other passages in appellant's story are likewise claimed to have been responsible for the writing of such songs as, "On the Atchison, Topeka and the Santa Fe", "Swing Your Partners Round and Round", "Oh You Kid", and many others. Appellant's argument that these songs were stolen from his manuscripts is unsound for several reasons. Ideas as such are not subject to copyright. Ansehl v. Puritan Pharmaceutical Co., 8 Cir., 61 F.2d 131; certiorari denied, 287 U.S. 666, 53 S.Ct. 224, 77 L.Ed. 574; Dorsey v. Old Surety Life Ins. Co., 10 Cir., 98 F.2d 872, 119 A.L.R. 1250; Kaeser & Blair, Inc., v. Merchants' Ass'n, Inc., 6 Cir., 64 F.2d 575. Nor is the right to the use of certain words protected by copyright. A copyright secures the right to that arrangement of words which the author has selected to express his ideas. Dorsey v. Old Surety Life Ins. Co., supra; Ansehl v. Puritan Pharmaceutical Co., supra; Harold Lloyd Corp. v. Witwer, 9 Cir., 65 F.2d 1; Affiliated Enterprises, Inc., v. Gruber, 1 Cir., 86 F.2d 958; Chamberlin v. Uris Sales Corp., 2 Cir., 150 F.2d 512. Appellant's attempt to show similarities by comparing a word or phrase taken from his manuscript with the word or words appearing in the lyrics of a song in appellee's motion picture is not in conformity with the test used in infringement cases and to which we have referred to above. We find no merit in the contention that any of the songs in defendant's movie were taken from plaintiff's manuscripts.

Appellant also argues that a character analysis of individuals portrayed in "The Harvey Girls" motion picture and appellant's manuscript "Old John Santa Fe" show many similarities. What we have said concerning parallels in setting and background is equally applicable here. Almost every story and motion picture about the old west contains some stereotyped roles of hero, heroine, and villain. Necessarily, character traits of individuals portraying these roles will exhibit similarities. Considering that both the movie and the manuscript presented activities of Harvey Girls, and information concerning them was received from the same source, we think it reasonable that some similarities in character portrayal could be discovered. The court below found that these similarities existed only in a remote degree and were not so clearly pronounced as to indicate copying. We see no reason to substitute a different judgment for that of the trial court.

Appellant argues that under the rule laid down in Universal Pictures Co. v. Harold Lloyd Corp., 9 Cir., 162 F.2d 354, to constitute infringement it need not be shown that the whole picture was copied, but the mere copying of a major sequence is sufficient. If this be the rule it avails appellant nothing for he has not brought himself within the rule. We are unable to find where any major sequence of appellant's work has been pirated. We note that in the case relied upon by appellant, Universal Pictures Co. v. Harold Lloyd Corp., supra, the court found that a sequence consisting of 57 consecutive comedy scenes had actually been copied by the defendant. Appellant has not been able to show any comparable copying by appellee in this case. We are convinced that the finding and conclusion of the trial court that appellee did not appropriate or copy any material or substantial part of appellant's works is in accord with and sustained by substantial evidence.

3. Appellant contends that the trial court erred in finding that his story "Cupid Rides the Rails" was a story of the early development of the Santa Fe

Railroad Company based upon historical data in the public domain. As stated in the fore part of this opinion, the principal characters in his story were the "boomers" working on the Santa Fe Railroad. The Harvey Girls supplied a romantic touch to the story principally because the idea was that they were the reputable women in these frontier towns. It cannot be disputed that the development of the Santa Fe Railroad into the Southwest; the existence of boomers in the early days of railroading; the growth of the Fred Harvey restaurant system as it followed the progress of the Santa Fe Railroad into the Southwest; the Harvey Girls, how they were chosen and the kind of persons they were—all these matters have a basis in history and have been the subject of many literary efforts in the past. In 1906 Elbert Hubbard wrote in his Philistine about Fred Harvey supplying wives as fine as his meals and said his matrimonial scheme was called The Harvey System. In 1924, Edna Ferber wrote "Our Very Best People", a story of the romance of a Harvey Girl and a brakeman of the Santa Fe Railroad. The setting for this story was also in a southwestern desert town. In April, 1940, "Our Southwest", by Erna Fergusson was published. One chapter in this book, under the title, "Fred Harvey—Civilizer", is devoted to a description of the Harvey eating places and the Harvey Girls. They are pictured as civilizing influences. Other similar instances could be enumerated. We conclude, as did the lower court, that these subjects were in the public domain and that no one had the exclusive right to use them.

Appellant argues, contrary to the finding of the trial court, that his story, "Cupid Rides the Rails", was intended to dramatize the Harvey Girls and not the Santa Fe Railroad and the boomers. In this connection it is to be noted that the condensation of this story which appeared in the Readers Digest, and from which was deleted the portions concerning railroading and the boomers, was much less than half the length of the original story. The trial court, after reading "Cupid Rides the Rails", thought it dealt primarily with railroad life and only incidentally concerned the Harvey Girls. We think the impression obtained by an ordinary reading of a story is a better guide to what the story actually dramatized than the author's statement of what he intended to dramatize.

4. Appellant contends that the trial court was in error in concluding that his stories were not new or novel and that information for said stories was furnished him by the Harvey people and the Santa Fe Railroad. We do not sustain the contention. It is clear that the general subject matter of plaintiff's compositions was not new or novel. There were many stories written about the Harvey Girls and the Santa Fe Railroad prior to appellant's efforts in that field. It need not be disputed that plaintiff was entitled to and did obtain a copyright for his particular narration and version concerning that subject matter, in so far as it was the product of his own creative effort. The trial court's finding that plaintiff obtained information from the Harvey representatives and the Santa Fe Railroad, and that later this same information was given to Adams and appellee's movie writers, is important only in showing that such general similarities as exist in appellant's story and appellee's motion picture were reasonably to be expected since much of the information was obtained from the same source. Even if all the material for appellant's stories had been gathered through his own efforts and no information was obtained from the Harvey people and the Santa Fe Railroad, still he published his material as facts and the law is clear that this same material could be used by another author if he so substantially changed the incidents of the story that the literary compositions bear no real resemblance to each other. Echevarria v. Warner Bros. Pictures, D.C., 12 F. Supp. 632. Authorities cited above show that it is not the idea, but only the form of expression that is protected by copyright.

In view of our conclusions, it is unnecessary to discuss appellant's final assignment of error regarding the question of damages.

The conclusions and judgment of the trial court are supported by the evidence.

The judgment is affirmed.