Frederick B. Bryant, J.
In this action the plaintiff seeks damages and an injunction against the defendants for alleged wrongful appropriation of the literary property of the plaintiff in plaintiff’s unpublished manuscript entitled “ American Silver Flatware of the Victorian and Edwardian Period ”. Defendant, Gf. L. Freeman, has written and defendant, Century House Publishing Co., Inc., has published a book entitled “ Victorian Silver ’ ’. Plaintiff alleges this book was copied from his manuscript in violation of the plaintiff’s common-law copyright in his unpublished work.
The plaintiff is a free-lance writer who has written generally on the subjects of architecture and design. The defendant, G. L. Freeman, a former university professor of psychology, has for several years devoted himself to the collecting of antiques and has done extensive research on the subject of antique Americana. He has written books and articles on a variety of subjects of interest to collectors of antique objects. He is president of Century House Publishing Co., Inc. and a director of the *1073 American Life Foundation, codefendants in the present action.
Century House Publishing Co., Inc. is engaged in the business of publishing books of special interest to collectors. The American Life Foundation is a nonprofit educational institution supported by voluntary subscription and devoted to the dissemination of information of interest to collectors and students of early Americana.
Sometime prior to 1960 the plaintiff became interested in silver flatware. In 1960 he met the defendant, Gr. L. Freeman, and discussed with him the writing of a book on the subject of silver flatware, particularly of the Victorian period, for publication by the defendant, Century House Publishing Co., Inc. Freeman, as president of Century House Publishing Co., Inc., encouraged the plaintiff to undertake this work and a contract was executed by the parties in which the plaintiff agreed to write a book about Victorian flatware for publication by the Century House Publishing Co., Inc.
In March of 1964, the plaintiff sent the defendant a sample chapter and outline of the proposed book. In July, 1964 he submitted the finished manuscript of his book which was entitled “American Silver Flatware of the Victorian and Edwardian Period ”.
The manuscript was returned to the plaintiff on July 22,1964, with the defendant’s comments and editorial notations. Meanwhile, plaintiff had also submitted to the defendant a sample of sterling flatware pattern listings, pattern index, list of Victorian silversmiths, trade-mark index and a list of silver-plated flatware manufacturers. These were not complete, but were samples of the material to be included in the book.
Sometime in the summer of 1964, the defendant Freeman complained about the delay in receiving the finished manuscript from the plaintiff in time for publication deadlines. This culminated in a termination of the contract with the plaintiff and, eventually, in the writing and publishing of the Freeman book.
In 1967 the Freeman book was published by the defendant, Century House. This book on the general subject of silver flatware and hollow ware brought about this action. There is nothing to indicate that defendant, the American Life Foundation, was in any way connected with either the preparation or publication of the book. Consequently, the plaintiff’s action is dismissed as to that defendant.
It is the contention of the plaintiff that in the writing of the Freeman book, “Victorian Silver ”, the defendant has copied and wrongfully appropriated substantial portions of the plain *1074 tiff’s manuscript, “ American Silver Flatware of the Victorian and Edwardian Period The plaintiff seeks damages for the alleged wrongful appropriation and also seeks to enjoin the defendants from any further publication or distribution of the Freeman book.
The plaintiff stresses the conceded fact that the defendant had access to his finished manuscript before writing the book which is the subject of the claimed infringement. He has carefully analyzed the defendant’s book and in his bill of particulars points to some 96 items which he claims were appropriated from his work.
The defendant Freeman emphasizes his own background in the field of antiques, particularly with reference to early English and American silverware. The evidence shows that both defendant and his wife had done extensive research in the field of silver flatware before the plaintiff agreed to produce a book on the subject. The evidence shows that defendant has ready access, as a director of the American Life Foundation, to an extensive library of some 20,000 volumes at Irelandville, New York, of which some 200 are on the subject of silver flatware and hollow ware. The evidence further developed the defendant’s long experience as a writer in the field of antique collecting and his interest in silver flatware which dates back to 1940 when he served in the United States Navy. In 1947 the defendant coauthored a book on silver flatware entitled “ Early American Plated Silver ’ ’.
Defendant produced in court a great many source materials which allegedly formed the informational basis of his work. The court notes that these materials obviously constitute common source material to which both plaintiff and defendant had ready access. The defendant testified as to the independent research which he did with the help of his wife in the field of silver flatware in preparing his book. One witness testified to consultations with the defendant in connection with the correct identification of silver flatware patterns.
The legal basis of the plaintiff’s cause of action is stated in American Jurisprudence, Pleading and Practice Forms (vol. 13, p. 280): ‘ ‘ An author, composer or other creator has certain property rights in his production, rights that were recognized at common law and still exist regardless of copyright laws. The only effect of copyright is to give the creator a monopolistic privilege, limited in time, to print or otherwise publish and sell copies of his creation. The creator is thus protected in two ways; he has a common law right of action for damages against anyone who publishes his previously unpublished production *1075 without his authority, and in addition, if he has obtained a copyright, he has a right of action under the copyright laws against anyone who unauthorizedly publishes his work even after the author has once published it.”
The property right in an unpublished manuscript which is entitled to protection is limited to the particular statement or compilation and does not extend to the plan adopted for imparting information. Also, it does not prevent another person from making an independent collection of the same facts or information and using it as his own. The right secured to an author embraces form, sequence and manner of composition in which he expresses the ideas but not the ideas themselves. (Moore v. Ford Motor Co., 28 F. 2d 529; Hewitt v. Coward, 180 Misc. 1065, affd. 266 App. Div. 992; Cantor v. Mankiewicz, 203 N. Y. S. 2d 626; Funkhouser v. Loews, Inc., 208 F. 2d 185.)
In order to constitute infringement there must be substantial identity with the original production and the simulation must establish piracy with reasonable certainty and not merely engender a suspicion of piracy. Mere resemblance between two literary works does not necessarily show that one is piracy of the other but is merely evidence of copying, the weight of which depends on the likelihood of resemblance in the absence of copying. (Harold Lloyd Corp. v. Witwer, 65 F. 2d 1.)
The early case of Daly v. Palmer (36 How. Prac. 206, 221) states the established rule: ‘ ‘ The true test as to whether there is piracy or not is to ascertain whether there is a servile or evasive imitation of the plaintiff’s work, or whether there is a bona fide original compilation made up from common materials and common sources, with resemblances which are merely accidental, or result from the nature of the subject.”
Copying consists in the exact or substantial reproduction of an original, using such an original as a model as distinguished from an independent production of the same thing. And a copy is that which comes so near to the original as to give to every person seeing it the idea created by the original and must be such that ordinary observation would cause it to be recognized as having been taken from the work of another. As stated in Fendler v. Morosco (253 N. Y. 281, 292): “ The literary larcenist must do more than filch ideas, imitate mannerisms, repeat information, borrow phrases, utilize quotations; you must be able to attribute to him the felonious intention of appropriating without independent labor a material part of a protected work. ’ ’
Reading and comparison of the books themselves can best dispose of the claim of infringement. (Wiren v. Shubert Theatre Corp., 5 F. Supp. 358, affd. 70 F. 2d 1023.)
*1076 Both the plaintiff’s and the defendant Freeman’s work has as a theme the development and use of silver eating utensils. Both books include descriptions of primitive eating tools and trace development of knives, forks and spoons from early times up through the Victorian and Edwardian years. Both works discuss the general use of silver in the manufacture of flatware and trace the development of the manufacture and marketing of both sterling silver and plated silver utensils through the early American industrial period. Both works contain commentaries on social habits and etiquette of the time in connection with dining customs. They contain information concerning social and economic factors that had a bearing on the development and use of silver eating utensils. They include quotations from earlier books on the subject and incorporate lists of silver manufacturers and silver patterns.
Plaintiff and defendant appear to have had different ideas as to what the plaintiff’s proposed book should contain. The defendant conceived the book as a history and reference book of interest primarily to collectors and his own finished work is just that. The plaintiff’s book, on the other hand, is a more whimsical and narrative treatise on silver flatware. Each of its chapters opens with a folksy quotation from some well-known writer and the writing itself reduces the subject to the level of popular interest as opposed to a work of reference and factual information.
An examination of the defendant Freeman’s earlier book, “ Early American Plated Silver ”, which is one of the exhibits in this case, reveals that it is similar in format, style and treatment of the subject matter and contains many of the historical facts which are presently set forth in both the plaintiff’s unpublished manuscript and the defendant’s book. Plaintiff testified that he first started his research in the field of silver flatware in 1957 because he could find nothing on the subject. The evidence shows, however, that not only was there considerable material available, but that Freeman himself had already researched the subject and incorporated the results of that research in his earlier book. It further appears from the exhibits and testimony that the plaintiff repeatedly requested the defendant to furnish him with material for use in plaintiff’s prospective book. These facts support the defendant’s claim that his book is the fruit of his own research and study and did not need to be a copy.
The plaintiff enumerates many alleged similarities between his manuscript and the Freeman book. However, “ similar! *1077 ties ’ ’ and ‘ ‘ idea snatching ’ ’ without more, are insufficient to support his cause of action. Plaintiff complains that both works contain similar accounts of the development of flatware pieces with specific references to early eating sets and customs. He asserts that both works contain descriptions of the properties and use of silver, an account of Italian and English manners as they affected eating habits, a history of the English and American manufacturers and their trade-marks and marketing methods with much detail concerning various plating methods and patterns. All of these concern historical 'facts in the public domain, easily available to anyone interested in pursuing the subject and, in fact, incorporated in the defendant’s own' earlier work.
The plaintiff further asserts that the similarity between his manuscript and the defendant’s book is most apparent in the passages concerning developments in flatware design, production and marketing during the Victorian and Edwardian periods. But, in fact, the similarity is actually between the defendant Freeman’s book and his earlier work, “ Early American Plated Silver”. The similarity between his book and the plaintiff’s manuscript in this respect is an indication of the plaintiff’s own reliance on and use of the defendant’s earlier materials.
The plaintiff could not acquire a monopoly in the narration of historical events (Rosemont Enterprises v. Random House, 366 F. 2d 303). The court stated the rule in Greenbie v. Noble (151 F. Supp. 45, 65): “ The fact that two works relate to the same subject matter or are similar to one another does not constitute an infringement if each is the fruit of the author’s independent intellectual effort. This is especially true when both works are derived from common sources and materials available to all so that the resemblances are either, accidental or result from the nature of the subject.”
The defendant testified that the material which appears in his book was obtained from sources common to, both the plaintiff and the defendant. While it is true that the defendant must also show that his work actually was dérived from the sources indicated, his disclaimer of qopying becomes plausible when he shows that he had access to material which could have served both the plaintiff and the defendant. (Sheldon v. Metro-Goldwyn Pictures Corp., 81 F. 2d 49.) In such cases similarities of real importance can readily be accounted for by references to the common source, thus dispelling the claim of copying (Bachman v. Belasco, 224 F. 817). ' Obviously the defendant had done extensive research in the general field of silver flatware and hollow ware for his earlier work and has produced in court a quantity of *1078 handwritten notes reflecting snch research. Complaint that he relied on and referred to the bibliography furnished him by the plaintiff is irrelevant. Plaintiff could not preclude the defendant from using such works or from quoting from them where pertinent.
The plaintiff argues that Freeman rushed his book into print to forestall publication of his own work. The contrary seems to be the fact. In the summer of 1964, in a letter introduced as part of an exhibit, the defendant, recognizing that he had advertised publication of a book which the plaintiff was not going to produce, referred to the possibility of “ re-doing ” and expanding his earlier work. Even with the background in the field which he already possessed, it was not until 1967, three years later, that his work appeared on the market.
The court has carefully examined each of the parallel quotations enumerated in the bill of particulars. It has been held repeatedly that plagiarism is not to be determined by fine analysis or by argument and dissection by experts, but by ordinary observation. (Wiren v. Shubert Theatre Corp., 5 F. Supp., 358, affd. 70 F. 2d 1023, supra; King Features Syndicate v. Fleischer, 299 F. 533; Dymow v. Bolton, 11 F. 2d 690; Greenbie v. Noble, 151 F. Supp. 45, supra.) In the court’s opinion the quotations enumerated do not show such degree of copying as to legally sustain the plaintiff’s cause of action. The writing style of the defendant is different. Those historical facts in the public domain are presented with a different emphasis and with less stress on social customs and more on development of the silver industry. At least one third of the parallel quotations listed are found in substance in the defendant’s earlier work, “ Early American Plated Silver ”. Plaintiff, in effect, seeks to prevent the defendant from using his own research and writing on the grounds that the plaintiff, at a later date, took advantage of such works and research for his manuscript.
In cases of this type the strongest evidence of copying is that of common errors in both books. (Produce Reporter Co. v. Fruit Produce Rating Agency, 1 F. 2d 58.) Such common mistakes most frequently occur in directories, often planted by publishers who are suspicious of plagiarism. However, in historical works it is not unnatural to find common errors repeated in other books on the same subject.
The plaintiff points to three instances of mistakes common to both the plaintiff’s manuscript and the defendant’s book. These errors appear to be errors repeated in other publications and easily traceable to common sources used by both parties. They *1079 are unsubstantial and not probative of copying. Further, at least one of the errors appears in the defendant’s earlier book, ‘1 Early American Plated Silver ’ ’ and, in fact, could have been taken from that work by the plaintiff himself, included in his manuscript, and later corrected.
Finally, while it is clear that defendant had access to the plaintiff’s manuscript and may have copied some of it, it must be shown that the copied material was a substantial part of the plaintiff’s work. (Malkin v. Dubinsky, 25 Misc 2d 460; Fendler v. Morosco, 253 N. Y. 281; Smith v. Little, Brown & Co., 245 F. Supp. 451; Nichols v. Universal Pictures Corp., 45 F. 2d 119.) The plaintiff has not sustained the burden of proof in this respect.
One aspect of the plaintiff’s case requires special consideration.
In the summer of 1964, the defendant proposed that a sample chapter from what he then expected to be the plaintiff’s book, publication of which was being announced, be run as an article in the “ Collectors’ Annual ”, a publication of American Life Foundation. The plaintiff submitted the chapter entitled ‘ ‘ Pieces ’ ’ from his manuscript. This chapter was slightly rewritten and somewhat condensed and was submitted to 1 ‘ Collectors ’ Annual ’ ’ under the title of 1 ‘ Knife vs. Fork or, When Did Victorians Eat? ”. After the article was ready for printing in the ‘ ‘ Collectors ’ Annual ’ ’ the contract for publication of plaintiff’s manuscript was terminated and the defendant Freeman was faced with the problem of what to do about the article. He solved this problem by allowing the article to appear as planned but under the name of J. Lazear as author, a pen name used by Freeman.
Thereafter, the plaintiff sued for misappropriation of his literary property by publication of the article. The court held in that case that the article did constitute an appropriation of the plaintiff’s literary property and awarded damages to the plaintiff. The court also ordered that the defendant be enjoined from further publication or other use of the plagiarized material.
It now appears, and it is so found by this court, that the article “ Knife vs. Fork or, When Did Victorians Eat? ” has been largely incorporated in chapter X of defendant’s book, “ Victorian Silver ”. It is true that some attempt has been made to rewrite. The court, however, does not consider the material in this chapter, as it now appears, to be such a substantial part of the defendant’s book as to affect the decision in this case.
However, the court is compelled to hold that this chapter has been reused in violation of the express prohibition of the order *1080 issued in the prior action. As a result of this violation the plaintiff is entitled to exemplary damages. The plaintiff is awarded the sum of $400 as exemplary damages against the defendants G. F. Freeman and Century House Publishing Co., Inc. All other causes of action are dismissed as to all defendants.